STATE EX REL. STATE HISTORICAL SOCIETY OF WISCONSIN and another, Respondents, vs. CARROLL, Appellant.

*January 10—February 5, 1952.*

10

12

For the appellant there were briefs by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

For the respondents there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, for the State Historical Society of Wisconsin, and by *Oppenheimer, Hodgson, Brown, Baer & Wolff* of St. Paul, Minnesota, for the F. R. Bigelow Foundation, and oral argument by *Mr. Resh* and *Mr. W. H. Oppenheimer.*

FAIRCHILD, J.  The mandamus action above referred to was instituted by the State Historical Society and the F. R. Bigelow Foundation, a Minnesota charitable corporation, against William D. Carroll, mayor of the city of Prairie

du Chien, and C. A. Plihal, city clerk, for the purpose of compelling the defendants to execute a conveyance of certain property known as Villa Louis and the historical relics contained in the buildings thereon upon and against the simultaneous delivery of certain other deeds referred to in a contract dated December 12, 1949, incorporated in the mandamus petition; and to turn over to the Society all moneys collected from the operation of the Villa Louis since May 12, 1950. The Historical Society is a state agency created by ch. 17, Laws of 1853, and the Bigelow Foundation is the successor in interest to Louis DeV. Dousman and Sarah E. Dousman, his wife, as to certain properties located in the city of Prairie du Chien. On May 6, 1935, it appears that the Dousmans conveyed Villa Louis, along with other property, to the city with the understanding and reservation that such property be used exclusively and be kept and maintained by the city as a public park, playground, and historical museum, with certain restrictions as to what was to be placed therein, which restrictions do not require consideration at this time; and that the property was conveyed on the condition that Louis DeV. Dousman, Violet Dousman Young, and Virginia Dousman Bigelow of St. Paul, Minnesota, be made life members of the Dousman municipal park board created by the common council of the city of Prairie du Chien. There was also the condition in the deed that if the city should "fail to maintain a public park, playgrounds, and historical museum" as provided in the deed, the property should revert to the Dousmans and their heirs.

On December 12, 1949, an agreement was entered into by the Dousmans, the city of Prairie du Chien, the State Historical Society of Wisconsin, and the Bigelow Foundation. This agreement referred to the May 6, 1935, deed and recited that it is the purpose of all parties to the agreement to preserve and maintain and operate the property in

question as an historical site for the benefit of present and future generations. In order to better carry out this purpose, there was an agreement to divide the real estate into separate tracts, the principal one of which, as far as the purposes of this case are concerned, is known as Tract A, or Villa Louis. With relation to that tract, the city agreed to convey the same to the Historical Society upon condition that if it should at any time fail to maintain and operate the property as an historical site and museum, the property should revert to the city, to be held by it on the terms and conditions of the May 6, 1935, deed. It was further agreed that as long as so operated by the Society, the city was to be relieved of the obligations to maintain and operate said property under the 1935 deed. The Society agreed to keep the buildings on Tract A and the personal property therein in good condition and repair, to take over the operation and management of the property as an historical site open to the public upon payment of an admission fee, and, circumstances permitting, to supervise the pageant customarily put on at the opening of the Villa in the spring, paying all expenses for so doing, and to keep the property insured.

It was agreed on the part of the Bigelow Foundation that upon the transfer of the property it would pay the Society $30,000 for repairs, improvement, and restoration of Tract A. The Foundation also agreed to give the Society $5,870 per year for the first three years of operation. This agreement was to remain in effect for the first three years and from year to year thereafter, subject to termination at the end of the three-year period or at the end of any year thereafter by either the Society or the Foundation upon six months' written notice to the other. It was also agreed that if at any time after three years the Foundation should for any reason be unable or unwilling to make the annual payment of $5,870, it should not be obligated to do so; and

the Society could either continue to operate the property or return it to the city, to be held in accordance with the 1935 deed. The Society was to have the right to terminate the agreement after three years and return the property to the city, should the financial demands exceed the revenues. Provisions were set up as to keeping accounts, and the Dousmans agreed to deed their reversionary interests in Tracts A, B, and D to the Foundation or its nominees.

All parties agreed to execute any and all deeds and other instruments to carry the agreement into effect, the intent being expressed that the turning over of Villa Louis to the Society for operation as an historical site should be consummated on or before the first day of January, 1950, and that thereafter the rights and obligations of the parties should be covered by the agreement.

The occasion of controversy over the rights claimed by the State Historical Society and the Bigelow Foundation as against the appellant, W. D. Carroll, may be pointed out by saying that the contract above referred to is claimed by the appellant to be void. He insists first that that result follows because the provisions of sec. 27.08 (2) (c), Stats., were not complied with in that the park board and not the common council has the right to dispose of park property, including the right to govern, manage, control, improve, and care for all public parks and also to acquire, in the name of the city, land for park purposes. The petitioners and respondents base their claim upon the contract and documents, the execution of which are, under the pleadings, to be accepted as established, and they insist that sec. 27.08 (2) (c) relied upon by appellant, does not apply. In meeting the contention of the appellant with respect to the proposition that the common council was without power or right to act in the matter of making the contract, it is contended on behalf of the respondents that no park board of a character subject to sec. 27.08 (2) (c) so as to have

the supervision or control over the lands and rights here to be dealt with was ever created. The 1935 deed contained a condition that the city council should create a Dousman municipal park board, with designated personnel. By a concurrent ordinance the council created the "Dousman municipal park board," a special board of twelve members, three of said members being the original grantor and two members of his family named as honorary life members. Compliance by the city with the grantors' requirement that there should be such a board was an indispensable part of the transaction. The jurisdiction of this board is confined exclusively to the particular property here involved. Sec. 3 of said ordinance reads:

"It shall be the duty of the Dousman municipal park board to assist and be the agents of the common council of the city of Prairie du Chien in the general supervision, management, and care of the Villa Louis, extending from Third street to the Mississippi River from east to west, and from the center of Bolvin street to the line on the south side of the property upon which the Dousman stables were formerly situated."

There is an amendment which excepts and reserves from said board's supervision other property. Sec. 4 of the ordinance further declared that "The Villa Louis shall be used only for the purpose of a museum. . . ." An inducement to the transaction was the reservation to the council and its agents, the Dousman municipal park board, of management and control of Villa Louis, *a museum*. We note that the board so created, with its character and functions limited to one specific museum and its appurtenances, is not the board of park commissioners whose powers and duties are prescribed by sec. 27.08, Stats., and there is no occasion for the city council to obtain its consent to, or procure its participation in, a sale of the premises. Sec. 27.08 speaks of public parkways, boulevards, or pleasure drives. The mu-

seum here in question is not a park, parkway, boulevard, or pleasure drive over which the statutory board of park commissioners has jurisdiction, and such a board has no interest in the transfer of a museum, the title to which, by agreement with the grantors, is directly and exclusively in the city and the control of which is in the council. The action of the city in its effort to put to a high level of usefulness the property in question and to create a public influence of wholesome sentimental inspiration and patriotic impulses in the interest of preserving ideals and commemorating historical events did not take the powers here relied upon by respondent away from the common council. The trial court concluded, under the facts existing: "There is no Wisconsin statute limiting by express language the city of Prairie du Chien in making the contract referred to in the pleadings herein." We agree with the soundness of this conclusion. The city has properly retained such power unto itself, where it must be exercised by the proper city authority, to wit, the common council, under and according to the spirit and intention expressed in the source of its title.

The second point which was ruled in respondents' favor relates to the existence of powers under sec. 62.11 (5), Stats. Under that statute the council has the management and control of the city property "except as elsewhere in the statutes specifically provided." As already mentioned, the appellant urges that as to the right of sale:

"It makes very little or no difference with respect to the right of a city to sell property whether it is or is not technically held in trust; if the property is devoted to a public use."

But there must be authority somewhere to manage and control it, all of which is supported by texts and in decisions in cases. It is clear that the city has broad powers. Sec. 62.11 (5), Stats., to which we have referred, reads:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

The respondents call attention to the case of *Beurhaus v. Cole* (1897), 94 Wis. 617, 627, 69 N. W. 986, where reference was made to existence of a power to grant by gift lands for parks and other public purposes and to sell and dispose of and convey the same as a power that was common in most city charters in this state. The charter of Prairie du Chien, a city of the fourth class, was repealed by sec. 62.02, Stats., and the city was incorporated under ch. 62, Stats., along with other cities of the same class. By sec. 62.04 of that chapter it was declared to be the intention of the revisors of the city charter law to grant all the privileges, rights, and powers to cities which they formerly had unless the contrary was declared. We find the situation to be, as stated in the respondents' argument, that in view of the saving clause in sec. 62.04 former powers are still retained by the city. Under its special charter, created by ch. 21, P. & L. Laws of 1872, published March 9, 1872, it was provided by ch. VIII, sec. 7, that:

"Said city may lease, purchase, or hold real or personal property sufficient for the convenience of the inhabitants thereof, and may sell and convey the same, and the same shall be free from taxation."

And sec. 8 thereof reads:

"No general law contravening the provisions of this act shall be considered as repealing, amending, or modifying the same, unless such purpose is expressly set forth in such law."

In respondents' brief it is said:

"The special charter of the city of Prairie du Chien was revised, consolidated, and amended by ch. 491, Laws of 1889, and sec. 101 of ch. XII repeated verbatim the substance of sec. 7, ch. VIII of ch. 21, P. & L. Laws of 1872, noted above."

It follows, therefore, that the city of Prairie du Chien, in accepting the deed from the Dousmans in 1935 and in joining in the contract of December 12, 1949, was acting within the powers conferred upon it under which a municipal corporation may constitutionally and effectively act. 37 Am. Jur., Municipal Corporations, p. 741, sec. 128:

". . . The reasonable use of public money for memorial halls, monuments, statues, gates or archways, celebrations, the publication of town histories, parks, roads leading to points of fine natural scenery, decorations upon public buildings, and other public ornaments or embellishments, designed merely to promote the general welfare, by providing for fresh air or recreation, by educating the public taste, or by inspiring sentiments of patriotism or of respect for the memory of worthy individuals, has received such general sanction that there can be no doubt that municipal corporations may be constitutionally authorized to expend money raised by taxation for such purposes. . . ."

The trial court in its memorandum decision recites:

"The Society took over the operation of the property on January 1, 1950, and is attempting in good faith to carry out its obligation under the contract. The defendant Hon. William D. Carroll, mayor of the city of Prairie du Chien, has interfered with such operation by causing certain persons to go on the property on May 13, 1950, to take over the collection of admission fees, and has refused to sign the deed conveying the property in question (Tract A), from the city to the Society, despite formal demand therefor by the Society and the Foundation. . . .

"By this proceeding the petitioners demand that the court command the mayor and city clerk of Prairie du Chien to

execute the deed in question to the Historical Society covering Tract A, and to transfer to the Historical Society all historical relics, books, documents, furniture, and other personal property contained in the buildings on said Tract A, and that they be commanded by the court to turn over and deliver to the Historical Society any and all moneys collected by them or either of them, or their officers, agents, servants, or employees, from the operation of said property since May 12, 1950.

"Hon. William D. Carroll succeeded Hon. Harry C. Speck as mayor of the city of Prairie du Chien. Mayor Speck did not veto the action of the common council within the time provided by law. Mayor Carroll since his incumbency in that office has refused to sign a deed pursuant to the resolution of the common council conveying Tract A to the Historical Society. Such deed was made available for him."

The court then expressed the opinion that:

"That which was formerly known in the law as a 'right of entry for condition broken' and now denominated a 'power of termination,' Restatement, Property, vol. I, sec. 24, page 60, is not, as petitioners contend, a present interest or future estate in land, as contemplated by the provisions of sec. 235.01 (1), or of sec. 235.50, or sec. 230.13 of the Wisconsin statutes. It is a mere right or claim to regain an interest or estate in land upon the happening of a condition subsequent."

He was of the opinion that it was a mere right or a claim to regain an interest or estate in land upon the happening of a condition subsequent.

We do not deem it necessary at this time to do more than to say that we do not accept that doctrine as fixed in the law of the state of Wisconsin. The question of reversion may never arise, but should it, then would be the time to decide so important a question. As the danger of champerty under the right of re-entry has lessened, there has for many years been accorded more consideration to the right of reverter arising from the provision for reversion under an

agreement with relation to condition subsequent. With this exception we agree with the result reached in the decision of the learned trial court.

The intended transfer of this property is of a public nature. It is from one public agency to another and for a worthwhile and lawful public purpose. The effect of the agreement is to place the responsibility for the desired result upon an authorized agency. When the transfer is completed, the city will be relieved of certain duties and financial responsibilities, which are taken over by the Historical Society, with additional aid furnished by the Bigelow Foundation. The city in its corporate capacity is in no way injured, and as far as the public is concerned it can lose nothing and will continue to receive the benefits by reason of the continuation of the project. As we have suggested, the common-law rule that possibility of reversion for condition broken cannot be assigned and that it is extinguished when conveyed is no longer consistent with the legal thought upon the subject, especially where property is conveyed upon condition of reverter. And this case is not controlled by provisions applying to private trusts as distinguished from public trusts.

The contention that the mayor has been deprived of his discretionary power is without merit. There is nothing remaining for him to do in view of the fact that his predecessor and the common council made the contract of December 12, 1949, binding upon the city of Prairie du Chien; and nothing remains for the present mayor to do other than a purely ministerial duty of executing and delivering the deed in question; and for this the writ of mandamus will lie. The contract having been within the power of the city to make, all discretion with respect to the propriety thereof having been exercised by the proper representatives of the city, the only thing remaining is the ministerial act. *McClendon v. State ex rel. Hot Springs* (1917), 129 Ark. 286, 195

S. W. 686, L. R. A. 1917F, 535. In that case, as stated in the headnote, it was ruled that,

"The mayor of a city cannot defeat a mandamus proceeding to compel him to execute a contract provided for by an ordinance passed over his veto, on the theory that it is an attempt to control his discretion." (L. R. A. 1917 F, 535.)

In the case of *Williams v. Stockton* (1925), 195 Cal. 743, 235 Pac. 986, the court held:

"Mandamus would lie to compel mayor to sign contract for construction of new city hall, though such duty did not arise under any charter provision, where he was authorized and directed by resolution of council to sign same, his duty then being ministerial only and involving exercise of no discretion, and plaintiff having no plain, speedy, and adequate remedy in ordinary course of the law; 'ministerial act' being one which a public officer is required to perform, on a given state of facts in a prescribed manner in obedience to mandate of legal authority, without regard to his own judgment or opinion concerning propriety of act to be performed." (Syllabus, 295 Pac. 986.)

See also *State ex rel. Mellott v. McCombs* (1928), 125 Kan. 95, 262 Pac. 579; *Slavich v. Hamilton* (1927), 201 Cal. 299, 257 Pac. 60; *State ex rel. Madison v. Bareis* (1946), 248 Wis. 387, 21 N. W. (2d) 721; 34 Am. Jur., Mandamus, p. 936, sec. 159.

The objection that the accounting factor provided for in the order was improper is overruled. Under the liberal rules of pleading in mandamus there is no reason for refusing to one entitled to consideration the relief to which he is entitled. *State ex rel. Sheboygan County v. Telgener* (1929), 199 Wis. 523, 227 N. W. 35; *State ex rel. Dame v. LeFevre* (1947), 251 Wis. 146, 28 N. W. (2d) 349.

It is considered that the trial court correctly ruled that the contract was supported by adequate consideration. In

the memorandum opinion overruling motion of defendants to quash the alternative writ of mandamus, the court summarized the undertakings of the various parties to the contract by pointing out that the Society agreed to keep the buildings on Tract A and the personal property in good condition and repair and agreed to take over the operation and management of the historic site and to do various other things connected with the supervision of the pageant customarily held at the opening of the Villa in the spring. In so far as the judgment below holds that by the terms of the contract the city of Prairie du Chien is to be benefited, that it obtains absolute title to some of the property held by it, that it is relieved of the responsibility of financing the historical features here involved, that the purposes of the contract as expressed therein are not illegal, and that the promises of the Foundation to finance the historical aspects of the enterprise are a sufficient consideration for the city's granting to the Foundation a right of surrender in the future if it is not interested in keeping up the historical features, the judgment is affirmed. The demurrer to the answer was properly overruled. All material facts being established, the writ must follow.

The following judgment by the trial court was entered July 17, 1951:

"The court on the 30th day of March, 1951, having made and filed its order sustaining the demurrer of the petitioners to the answer of the defendant, William D. Carroll, without costs, and said order providing that the petitioners have judgment for a peremptory writ of mandamus as prayed for in the petition herein, and the parties having subsequently stipulated that the defendant, William D. Carroll, be permitted to amend his answer by adding thereto an additional paragraph, number 28, a copy of the proposed paragraph with exhibits therein referred thereto being attached to the stipulation, and said amendment having been ordered by the court under date of June 2, 1951,

"Now, therefore, on motion of the attorneys for the petitioners,

"It is ordered and adjudged:

"1. That the demurrer of the petitioners to the answer of the defendant, William D. Carroll, as amended, be and it hereby is sustained.

"2. That the defendant, William D. Carroll as mayor, and the defendant, C. A. Plihal as clerk, respectively, of the city of Prairie du Chien, do within twenty (20) days after the service of notice of the entry hereof execute in conformity with law in the name of and on behalf of said city a deed and bill of sale in the form hereto attached and marked Exhibit A and made a part hereof, conveying and transferring to the petitioner, State Historical Society of the state of Wisconsin, the property described as "Tract A" in the petition herein, and all historical relics, books, documents, furniture, and other personal property contained in the buildings on said "Tract A" at the time of its transfer to the city of Prairie du Chien, on the terms and conditions set forth in the contract of December 12, 1949, referred to in the petition herein, and affix the corporate seal of the city of Prairie du Chien thereto, and deliver the same upon and against simultaneous delivery of the other deeds referred to in said contract to be executed and delivered by F. R. Bigelow Foundation, as successor in interest to the interests of Louis DeV. Dousman and Sarah E. Dousman, his wife, and upon compliance by petitioners with all the other terms and conditions of said contract to be performed by them either prior to or simultaneous with the delivery of said deed."

*By the Court.*—The judgment granting the relief prayed for and ordering the issuance of the writ of mandamus is affirmed.