GLENDALE DEVELOPMENT, INC., Appellant, v. BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN and others, Respondents.*

*November 1—December 2, 1960.*

* Motion for rehearing denied, without costs, on February 7, 1961.

124

For the appellant there were briefs by *Immell, Herro, Buehner & DeWitt* of Madison, and oral argument by *Jack R. DeWitt* and *Norman C. Herro*.

For the respondent Board of Regents of the University of Wisconsin the cause was argued by *Warren H. Resh,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general, joined in by *Stroud, Stebbins & Stroud* of Madison, for the respondents Kelab, Inc., and Hilldale, Inc., and oral argument by *Donald R. Stroud.*

DIETERICH, J.   The issue raised on the demurrer interposed by the state of Wisconsin is whether the state of Wisconsin is a necessary party to a proper determination of the rights of the parties.

The plaintiff is in accord with the general proposition of law that the state is immune from suit in the absence of consent.   Plaintiff contends, however, that under sec. 262.10, Stats. 1959, the state may be made a party.

Sec. 262.10, Stats., provides:

"SERVICE ON STATE; JUDGMENT. The state may be made a party defendant in any action to quiet title under the provi-

sions of sec. 281.01 or between other parties, when necessary to the proper determination of their rights. The summons with a copy of the complaint shall be served by delivering a copy to the attorney general or leaving it at his office in the capitol with his assistant or clerk. The complaint shall set forth with particularity the nature of the interest or lien of the state. But no judgment for the recovery of money or personal property or costs shall be rendered in any such action against the state."

Sec. 36.03, Stats., provides:

"POWERS OF BOARD; OFFICERS. The Board of Regents and their successors in office shall constitute a body corporate by the name of 'The Regents of the University of Wisconsin,' and shall possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law, and shall have the custody of the books, records, buildings, and all other property of said university. . . ."

For the purposes of this opinion we shall refer to it as "Board of Regents."

The relief asked for by the plaintiff in its complaint is the setting aside of the sale of lands by Board of Regents of the state of Wisconsin.

The Board of Regents, by statute, is authorized to sell and lease lands.

Sec. 36.34 (1), Stats., provides:

"SALE AND RELOCATION OF AGRICULTURAL LANDS. (1) *Policy.* The legislature hereby finds and determines that, because of (a) the problems resulting from the development of the city of Madison around certain agricultural lands of the state university; (b) the desirability of consolidating lands used for agricultural instruction, research, and extension purposes; (c) the desirability of disposing of agricultural lands no longer needed by the university; and (d) the need for land of better quality and of greater quantity for the purpose of improving and expanding agricultural research, it is in the public interest for the Regents of the university to sell from time to time, or lease, in whole or in

part, the agricultural lands and improvements thereon owned by said Regents and located in . . . and to purchase other agricultural lands outside of the Madison urban area and to construct thereon the necessary buildings and improvements. The foregoing policy determination is made without reference to or intention of limiting the powers which the Regents may otherwise have."

The real estate which is the subject matter of this suit was exclusively owned by the Board of Regents. All interests in the property are subordinate to its title. *Aberg v. Moe* (1929), 198 Wis. 349, 359, 224 N. W. 132.

If the plaintiff should prevail and the sale set aside and the title to the real estate revested in the Board of Regents, such actions would in no way affect the state of Wisconsin, and complete relief could be granted to the plaintiff without resorting to any act to be performed by the state of Wisconsin. It appears that if the state is not a necessary party to the conveyance, then it certainly is not a party to an action to compel cancellation of the conveyance.

Furthermore, the plaintiff has not set forth in its complaint the nature of the interest or lien of the state and hence cannot rely on sec. 262.10, Stats., since that statute requires more than the mere naming of the state as a party. Under the settled law of this state we determine that the state had no interest *per se* in the lands in question here. *Aberg v. Moe, supra.*

Accordingly, the state of Wisconsin is not a necessary party to the proper determination of the rights of the parties, and the judgment sustaining the demurrer must be affirmed.

The defendants have interposed the defense of laches, claiming that since the shopping-center project has been a matter of public record for over a year, plaintiff is estopped from maintaining this action.

An examination of all the facts and circumstances of the instant case fails to disclose that the plaintiff was so lax as

to bar its right to the remedy it seeks. *Foote v. Harrison* (1909), 137 Wis. 588, 119 N. W. 291; *Zlindra v. Zlindra* (1948), 252 Wis. 606, 32 N. W. (2d) 656; *Leuch v. Egelhoff* (1949), 255 Wis. 29, 38 N. W. (2d) 1; and *Pugnier v. Ramharter* (1957), 275 Wis. 70, 81 N. W. (2d) 38.

The pleadings and supporting affidavits of the respective motions for summary judgment disclose the following facts:

The Board of Regents of the University of Wisconsin owns various tracts of land in the vicinity of the city of Madison, including a tract known as University Hill Farms, a part of which is bounded on the north by University avenue and its eastern boundary running and extending in a southerly direction on Midvale boulevard in the city of Madison, consisting of 33.83 acres. Because of its location this land is much-more valuable for commercial purposes than as farmland. Various tracts from the Hill Farms have been sold by the Board of Regents to various persons and for different prices per acre, several at a less price per acre than in the case at bar.

The affidavit of Clarke Smith, secretary of the Board of Regents, has three exhibits attached to it. Exhibit 1 is a copy of the resolution of the Board of Regents of the University of Wisconsin under date of May 3, 1958, authorizing the sale of the lands in question subject to the approval of the attorney general as to legality and the approval of the state building commission, and authorizing the use of anonymous-gift-fund moneys for a gift of the purchase price to the nonprofit corporation purchasing the land.

Exhibit 2 is a copy of the University Hill Farms suggested plan for development of the shopping center, which plan was incorporated by reference in the May 3, 1958, Regent resolution.

Exhibit 3 is a copy of the official opinion of the attorney general approving the legality of the proposed conveyance.

Mr. Smith's affidavit also goes into the subject of adequacy of consideration and among other things points out that tracts of land of comparable value and size in the same area have been sold for $2,750 per acre by the Regents.

Mr. Smith's affidavit points out that both corporate defendants are formed and controlled by friends of the university who are in a position to proceed with the development in a way that will be consistent with high-quality standards so as to benefit the university and the public, and more particularly that the proposed development is in keeping with a change in thinking by university administrators, whereby the sale of or disposition of university lands is handled in a way so as to result in continuing income to the university from such lands which are no longer needed for university purposes. The most-conspicuous example pointed to by Mr. Smith is the handling of the university lands by the University of Washington in Seattle pursuant to a leasing arrangement netting millions of dollars to the university in the years past and for the years to come. He points out that Michigan State University has been doing the same thing although apparently on a more-modest scale, and that Purdue University has resorted to the nonprofit corporation or foundation for holding such lands and for shopping-center development.

The affiant concludes by pointing out that the Regents of the University of Wisconsin have had the benefit of the experience and advice of the administrative officers of other universities in reaching the decision not to sell the lands in question to private promoters.

Sec. 36.34 (3), Stats., provides that the sale or lease of agricultural lands of the state university is subject to the approval of the state building commission.

The affidavit of Mr. Rothermel, as secretary of the state building commission, shows the minutes of the state building

commission under date of December 10, 1958, whereby the commission approved the sale of the land by the university to a nonprofit corporation for a consideration of $6,000 per acre for development as a shopping center.

The defendant, Kelab, Inc., is a nonstock, nonprofit corporation organized under Wisconsin statutes by friends of the university. The purpose of the corporation is stated in its articles as follows:

"The purpose or purposes for which the corporation is organized are exclusively educational and charitable, as follows: To aid the University of Wisconsin by solicitation for the benefit of said university of gifts of real property or personal property or both; to collect, accept and receive gifts, bequests, devises, or things of value and to hold, administer, use, or distribute the same for the benefit of the University of Wisconsin.

"The corporation shall have no members, and no part of the net income shall inure, in whole or in part, to the benefit of any individual, nor shall any part of its activities be directed to influence legislation by propaganda or otherwise."

There are no stockholders nor members and all net income, as provided in the seventh paragraph of the articles of incorporation, shall be paid to the Regents of the University of Wisconsin and that also in case of the dissolution of the corporation, its assets shall be transferred to the University of Wisconsin, and further, paragraph seven of its articles provides:

"The provisions of this article with reference to the disposition of the net income of the corporation and of the assets of the corporation upon dissolution shall not be subject to amendment."

The defendant, Hilldale, Inc., is a Wisconsin business corporation formed by friends of the university, its stock being entirely owned by the University of Wisconsin Founda-

tion as an investment. The University of Wisconsin Foundation being also a nonstock, nonprofit corporation organized and operated to aid the University of Wisconsin. All profits made by Hilldale, Inc., will be paid to the University of Wisconsin Foundation which in turn will pay the same to the University of Wisconsin. The articles of Hilldale, Inc., further provide that in the event of the dissolution of the University of Wisconsin Foundation, the assets, property, and estate of the corporation, after payment or discharge of its debts, obligations, and liabilities, shall be transferred to the Regents of the University of Wisconsin.

The affidavit of A. W. Peterson, acting vice-president of the University of Wisconsin in charge of matters relating to business and finance, has attached to it as Exhibit 1 a copy of an anonymous-gift offer of September 23, 1943, by two friends of the university. The offer points out that the only condition of the gift is that it remain completely and forever anonymous, and in the addendum to the offer it is stipulated that the Regents shall have complete discretion at any time and from time to time to manage and dispose of the fund or any part thereof as freely as an absolute owner.

Mr. Peterson further states that prior to the time of the land purchase by Kelab, Inc., he personally obtained the consent and approval of the anonymous donors for the use of part of the gift money by Kelab, Inc., in making the purchase from the Regents.

The Board of Regents gave to Kelab, Inc., the sum of $300,000 from the anonymous-donor fund for the purpose of buying the 33.83 acres, and invested $95,000 of said sum in debentures of the proposed corporation known as Hilldale, Inc., to develop the shopping center. This money was given from the anonymous-gift funds heretofore referred to.

Kelab, Inc., then purchased said 33.83 acres from the Board of Regents paying therefor $6,000 per acre, a little

less than $205,000. The deed recites the consideration at $202,980.

Kelab, Inc., then leased said land to Hilldale, Inc., for a term of thirty to fifty years for the purpose of developing a shopping center with proper provisions that all net rentals from said lease were to be paid to said Board of Regents. The lease provided that Hilldale, Inc., is to construct all buildings and provide the necessary equipment for the shopping center.

The Board of Regents will receive all rentals received by Kelab, Inc., for rental of the land, and University of Wisconsin Foundation, sole owner of Hilldale, Inc., will receive all dividends declared or paid by Hilldale, Inc., and at the dissolution of Hilldale, Inc., or its discontinuing for any other reason, all buildings and equipment (as well as the 33.83 acres) will revert to the Board of Regents. The affidavits estimated that the profits to University Board of Regents, and hence the university, will amount to a very large sum of money.

The mechanics of the development of the shopping center as set forth by the affidavits are as follows: The bare land is to be leased for a thirty-five to fifty-year term by Kelab, Inc., to Hilldale, Inc. There will be a minimum or guaranteed annual rental plus a graduated percentage of Hilldale's gross income from the shopping-center buildings. Hilldale's gross income will be derived from the shopping-center buildings by leasing space to various private retail stores and businesses with these leases calling for a minimum annual rental plus a percentage of the gross sales.

All of the outstanding capital stock of Hilldale, Inc., a fully taxable business corporation, is owned by the University of Wisconsin Foundation as an investment. The president of the Foundation is also president of Hilldale, Inc. The Foundation is a nonstock, nonprofit corporation organized and operated to aid the University of Wisconsin, and the

dividends which Hilldale, Inc., pays to its stockholder, the Foundation, will be utilized by it to aid the university. The ground rent paid by Hilldale, Inc., to Kelab, Inc., will in turn be paid by it directly to the Regents of the University in accordance with Kelab's articles of incorporation.

Hilldale, Inc., has expended substantial amounts of money in the employment of architects and engineers to plan the proposed shopping center and has expended further substantial sums of money in the installation of sewer laterals for grading the land, etc. The affidavit of Mr. Hugo Kuechenmeister states that Hilldale, Inc., has made commitments to construct the shopping center and lease space to various retail concerns such as F. W. Woolworth Company, Ed. Schuster & Company, Inc., Yost's-Kessenich's, Ed Schmitz & Sons, Great Atlantic & Pacific Tea Company.

The affidavits and documents filed by the plaintiff all relate to the sales price of other parcels of this tract to other purchasers during the years 1958 and 1959.

The base price set by the legislature for sale of 30 acres to the state building commission for a state office building was $2,750 per acre in 1957. Sec. 36.34 (6), Stats.

As to whether a public debt was contracted in violation of sec. 4, art. VIII of the Wisconsin constitution, the plaintiff contends that the proposed plan violates the Wisconsin constitution in the following respects: That the state is engaged in the work of internal improvements; that the state contracted an unauthorized public debt contrary to sec. 4, art. VIII of the constitution, which provides:

"The state shall never contract any public debt except in the cases and manner herein provided."

This court has repeatedly held that nonstock, nonprofit corporations organized by friends of the university for its benefit, could do things which neither the state nor the university could do directly, that such corporation is not an

arm or agency of the state and does not engage the state in work of internal improvement or create a state debt. *Loomis v. Callahan* (1928), 196 Wis. 518, 220 N. W. 816; *State ex rel. Wisconsin University Bldg. Corp. v. Bareis* (1950), 257 Wis. 497, 44 N. W. (2d) 259; *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 60 N. W. (2d) 873; *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 65 N. W. (2d) 529; and *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577. As to creating a state debt, see *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577.

In that case the mechanics of that transaction were as follows: The state building commission first conveyed the land to the Wisconsin State Public Building Corporation for a consideration of $125,000 pursuant to the authority granted by sec. 14.89 (1) (a), Stats. The corporation simultaneously mortgaged the land to Allstate Insurance Company on an open-end mortgage permitting the maximum draw down of $4,600,000. The proceeds were used by the corporation to pay for the land and the cost of construction of the office-building unit as well as to retire previous indebtedness to the state insurance fund. Allstate had the right to foreclose on the land and improvements. At the same time the corporation leased the land and proposed building to the state building commission for a term of thirty years. The lease expressly reserved a right of re-entry to the corporation if the commission defaulted under the lease, and the lease was made subject to the mortgage. Also the building commission consented to a pledge by the corporation of the commission's obligation to pay rentals. Here there was a sale of valuable state-owned land for a consideration which may or may not reasonably reflect the fair market value. Moreover, the sale was made without the corporation's using its own money to make the purchase, as it had none. It was seriously con-

tended among other things that the over-all effect of the transaction was to loan the credit of the state to the corporation contrary to sec. 3, art. VIII of the Wisconsin constitution, and that the entire transaction, although in form of a sale of land and lease back, was actually a contract of purchase for the building and that a state debt was thereby created contrary to secs. 4, 6, and 7, art. VIII, Const. This court rejected the claim that a state debt was created, and stated, at page 50 of 271 Wis. :

"Under these decisions it is apparent that since the building corporation is not an agency of the state, its obligations are not enforceable against the state, despite any right to tax exemption."

This court has heretofore held that no state debt is created unless the state itself is under a legally enforceable obligation. *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 277 N. W. 278, 280 N. W. 698.

The plan to prevent the state from engaging in a private business enterprise has effectively been accomplished. It insulates the state from debt and insulates it from the business being conducted.

The plaintiff also contends that public property was given for a private purpose contrary to law. This goes to the sufficiency of the consideration received by the Regents for the land sold to Kelab, Inc., and also the gift from the anonymous donation of the money used by Kelab, Inc., in making purchase of land.

Sec. 36.34 (1), Stats., authorizes the Regents to sell or lease lands of the university in the so-called University Hill Farms.

It is amply established by affidavits, with exhibits attached, of Clarke Smith and J. R. Rothermel, Jr., as secretaries of the Board of Regents of the University of Wisconsin and

state building commission, respectively, that the sale was properly authorized and consummated pursuant to law. In order to set aside such a sale, our court has held that one so asking must establish (1) illegality, (2) fraud, or (3) a clear abuse of discretion in making the sale. *Newell v. Kenosha* (1959), 7 Wis. (2d) 516, 96 N. W. (2d) 845, and *Hermann v. Lake Mills* (1957), 275 Wis. 537, 82 N. W. (2d) 167.

Alleged illegality has been heretofore considered. Fraud was neither alleged nor claimed by plaintiff. This leaves only the question of clear abuse of discretion on the part of the Board of Regents in making the sale for the consideration received and to be received.

The affidavits of both parties show that the cash received per acre by the Board of Regents for the land sold in the case at bar was comparable with that received for other tracts out of the Hill Farms and much higher than for some tracts. A large tract of 33.83 acres would naturally sell for less per acre than a small lot or tract; and no doubt the fact that a shopping center was probable in the neighborhood enabled the board to sell other lots at a higher price than it would have received had there been no probability of such a shopping center.

The only affidavits produced by the plaintiff as to inadequacy of the consideration relate to the cash value of the land. No consideration is given to the many advantages, financial and otherwise, accruing to the university by virtue of the creation and operation of the shopping center.

This court has gone further and sustained such a conveyance where there was no cash consideration but where there were other adequate considerations by way of obligations on the part of the grantee. *State ex rel. State Historical Society v. Carroll* (1952), 261 Wis. 6, 51 N. W. (2d) 723.

Affidavits were produced by the defendants, from experts, giving their opinion as to the great probability of the ven-

ture's producing huge profits to the university from the rental of the land and the operation of the shopping center, profits much greater in value than the cash received by the Regents for the land in the first instance.

Plaintiff states that there is no assurance the shopping-center project will prove profitable. The affidavits show that in all probability it will be a great success, at least according to the judgment of experts who should know, as shown in their affidavits.

In every investment made by a man or men there is a factor of chance. When one buys a bond or stock, no matter how good it may look, there is no absolute assurance that the investment will turn out satisfactorily. One, so investing, can do nothing but exercise a wise discretion and use his best judgment. So with the Board of Regents, when it approved the project, and voted to sell the land for the considerations indicated and use part of the anonymous-gift fund in its hands, as it did, it no doubt exercised its wisest discretion and best judgment. This is the same discretion and judgment it has used and is using in making all of its other investments. In selling the land it took all of the precautions and proceedings required by law. This judgment was concurred in by the state building commission composed of men who are known as fine businessmen and executives and men of integrity and sound judgment.

In using some of the anonymous-gift funds it acted, as it believed, for the ultimate benefit of the university and as provided by the terms of the instrument creating the gift to the Board of Regents.

Can the court now, in its review of this discretion so exercised by the Board of Regents (and also the state building commission) say that the board was guilty of an abuse of discretion? Abuse of discretion usually implies not merely error of judgment but perversity of will, passion, prejudice, or partiality or moral delinquency. *Grayson County v. Har-*

*rell* (Tex. Civ. App. 1918), 202 S. W. 160; *Deeds v. Deeds* (1921), 108 Kan. 770, 196 Pac. 1109; *Citizens Street R. Co. v. Heath* (1902), 29 Ind. App. 395, 62 N. E. 107; *People v. New York Central R. Co.* (1864), 29 N. Y. 418; *Williams v. Board of Education of City of Parsons* (1908), 79 Kan. 202, 99 Pac. 216, 22 L. R. A. (N. S.) 584; and many other cases cited in 1 Words and Phrases (perm. ed.), Abuse of Discretion, p. 179. None of such elements are alleged to exist here.

In *Seifert v. Buhl Optical Co.* (1936), 276 Mich. 692, 268 N. W. 784, that court held that to be an abuse of discretion the abuse ought to be so plain that upon consideration of the facts an unprejudiced person can say there was no justification or excuse for the action taken.

We have held that where there are conflicting affidavits as to the value of the property but the consideration consists in part of benefits to the public, other than the cash, a taxpayer's motion will be denied but that in such a case a motion for summary judgment by the defendant would be proper. *State ex rel. Evjue v. Seyberth* (1960), 9 Wis. (2d) 274, 101 N. W. (2d) 118; *Hermann v. Lake Mills, supra,* and *Newell v. Kenosha, supra.*

In the case at bar it is the judgment of the Board of Regents and not that of the court that should evaluate these undetermined considerations.

There is no doubt but that the anonymous donors of the money to the Board of Regents desired that it should be used by the Board of Regents in any legitimate manner and in its discretion, so long as it was for the benefit of the university.

There can be no doubt that the donors by the terms of their gift and later by their consent desired the Board of Regents to use its discretion as to how the money was to be spent so long as it was for the benefit of the work of the

university. Counsel argues that any and all fantastic and illegitimate enterprises might be fostered. Likewise, it must be written into this gift, that the donors intended only lawful and legitimate enterprises—others would not be for the benefit of the university.

While the funds were public funds in a general sense, they were funds earmarked for such purposes as the Board of Regents, in its discretion, deemed proper, so long as they were for the benefit of the university.

Many gifts are given to the university for various purposes and are earmarked for the same. Of course, they are public funds belonging to the public in a general sense, but certainly are to be used for the purposes given. Here the purposes were placed in the discretion of the Regents. The Regents of the university receive many gifts from corporations and individuals, to be used for a given purpose. All such gifts when accepted must be used in the manner provided by the articles of donation.

The money was properly spent by the Board of Regents when it advanced it to Kelab, Inc., under the circumstances and for the purposes under the plan. The plan in no way violates the due-process clause or any other provision of the United States constitution or the state constitution.

In the case at bar, public property is not taken for private use. The land was sold for considerations which seemed to the Board of Regents in its discretion as adequate and the money given to Kelab, Inc., was properly used for the benefit of the university within the discretion and best judgment of the Board of Regents.

The learned trial court's written memorandum decision reflects an exhaustive study relative to the questions involved in this case, and we have incorporated to a great extent his memorandum in this opinion.

The judgment of the trial court sustaining the demurrer is affirmed and the judgment of the trial court dismissing plaintiff's complaint is affirmed.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). Very probably the university will benefit from the arrangement under consideration. I regret, therefore, that I cannot conscientiously join in approval.

There are a number of serious questions raised by facets of this arrangement. Their multiplicity, and the accompanying difficulty of dealing with all facets at once is a tribute to the ingenuity of the designer. I will discuss only the objection that the Regents have sought to make the state a party in carrying on a work of internal improvement, forbidden by sec. 10, art. VIII, Const.

We must bear in mind that the disposition of the land in question has been effected under the authority of the Regents to sell or lease university land. The legislature has given no more specific authority to enter into the arrangement which has been made. Thus the particular method of disposition employed does not come before the court with the presumption of constitutionality which would tend to support it if the legislature had expressly authorized it.

It must also be conceded that if the Regents had directly dedicated state property or state funds to make possible the construction of a commercial shopping center, the constitutional prohibition against works of internal improvement would have been violated. *State ex rel. Martin v. Giessel* (1948), 252 Wis. 363, 371, 31 N. W. (2d) 626, holding invalid a grant of state funds to local housing authorities to aid in construction of veterans' housing projects.

Can a similar end result be accomplished by the means here employed?

The Regents evidently concluded that they were not authorized to deed the land to Kelab, Inc., without consideration, but that they were legally free to make a gift to Kelab, Inc., of the "anonymous" funds. Thus, the disposition of state land has been given the appearance of a sale for a cash consideration. As a result of the gift of the funds, succeeded by the apparent sale, funds which may not at the start have been subject to all the restrictions as to manner and purpose of use to which other state funds are subject, now have the unqualified character of state funds.

Assuming the correctness of the Regents' conclusion that because of the special character of their possession of the "anonymous" funds, such funds, unlike the state land, could be dedicated to make possible the construction of a shopping center, it has not been established that the amount of money collected from Kelab, Inc., is equal to the value of the land.

It is apparently claimed that the amount can be adequate without being equal; and that the Regents, in their discretion, could treat the anticipation of the ultimate enjoyment by the university of the net profits of Kelab, Inc., and Hilldale, Inc., as a sufficient offset against any insufficiency of the price.

The matter is now here upon summary judgment, without a determination, by trial, of the issue of fact as to the sufficiency of the price. Assuming, as we must, at this stage, that if that issue were tried, plaintiff might prevail, and show that the value of the land was not $6,000, but $25,000 per acre, it would follow, in my opinion, that state property, to the extent of the difference, has been dedicated for the creation of a shopping center, and that there has been a violation of the constitutional prohibition against the state's being a party in carrying on a work of internal improvement.

The decisions relied upon in the majority opinion deal primarily with plans for the construction by friendly corpo-

rate entities of facilities for the carrying on of the functions of state government, and hold that debts of such corporate entities are not debts of the state, and that those plans therefore do not violate the prohibition against state debt, sec. 4, art. VIII, Const. Those plans were, for the most part, plans for financing activities which the state could legally have performed if it had sufficient funds. It has never been decided that state property may be conveyed to one of these friendly entities at less than a fair price so that it can build a commercial establishment.

In my opinion, the issue as to the value of the land disposed of should have been resolved by trial. If it were determined that the price received was less than the fair market value of the land, the illegality of the transaction would be established. If it were determined that the price was sufficient, other issues, such as whether the Regents were free to dedicate the donated funds to the construction of a shopping center would need to be resolved.