JOE E. NUSBAUM, Secretary, Department of Administration
You state that the University of Wisconsin submitted to your office for audit and payment a claim for travel expense incurred by *Page 5 
an individual who traveled from Indonesia to Wisconsin for an employment interview. In addition, a claim for reimbursement was also presented for the prospective employe's wife who accompanied her husband.
Based on your interpretation of the law, the claim for the applicant's employment interview expense was approved and paid. The claim for the expenses of the applicant's wife has not been paid because it is your view that neither the law nor the rule relating to employment interview expense permits such payment. University of Wisconsin officials contend, however, that the expenses of the applicant's wife may be paid from the President's Special Trust Fund which is composed of certain unrestricted gifts made to the University of Wisconsin and is to be used in accordance with guidelines approved by the Business and Finance Committee of the Regents. You state that the term unrestricted gift apparently means one which the donor did not limit to some particular use, but evidently intended to be used for general University purposes.
Paragraph (2) of current guidelines provides:
"2) The Committee approved the following guidelines for the operation of the President's Special Fund (Trust):
"Expenditures from this fund shall be solely for the purpose of University-related activities.
1. Tuition for special students
2. Unique expenditures for educational purposes, including aid to individual students
3. Expenditures of a minor nature for University relations
4. Expenditures for which commitments have been made but budgeted funds are not available
5. Expenses incidental to unusual situations
6. Expenses arising from unforeseen and unprogrammed occasions
7. Expenses adding a Presidential dimension to academic and cultural programs
8. Other expenses approved specifically by the Business and Finance Committee of the Regents *Page 6 
"Contributions of $10,000 or less to the Regents or the President which are unrestricted shall be added to this fund. Contributions in excess of $10,000 shall be considered individually.
"In addition to the contributions, the investment earnings shall become available as increments to the fund."
You state that University of Wisconsin officials maintain that under the provisions of sec. 36.065 (1), Stats., the use made of any gift, whether restricted or unrestricted, is legal and valid despite any other provisions of the statutes which may be in conflict therewith.
The Department of Administration's position in this matter has been that restricted gifts may be expended in accordance with the expressed wishes of the donor if such use does not conflict with any specific statutory provision, or would not result in a completely absurd expenditure, but that the expenditures of unrestricted gifts, i.e., gifts for general university purposes, are subject to the laws and conditions applied to state expenditures in general.
Your first two questions, as renumbered, are:
"1. Are the provisions of section 20.916 (2) and the rules adopted in connection therewith limited to paying employment interview expenses for a prospective employe only, or can it be extended, by rule or otherwise, to include payment of expenses for an employment candidate's wife or some other person associated with the prospective employe?
"2. Do the rules of the Director of the Bureau of Personnel (Department of Administration) relating to employment interview expenses apply to faculty positions, or are they limited to positions in the classified service only?"
I am of the opinion that insofar as reimbursement to theapplicant is concerned, reimbursement for actual and necessary travel expenses incurred in connection with oral examination and employment interviews is permissible only with respect to those personal to the applicant and payment to the applicant cannot include payment of expenses for travel expenses of the applicant's wife or some other person associated with the prospective employe.
I am of the opinion that the rules of the Director of the Bureau of Personnel implementing sec. 20.916 (2), Stats., apply to applicants *Page 7 
for positions in the classified and unclassified divisions of the civil service and therefore apply to faculty positions at the University of Wisconsin.
The other subsections of sec. 20.916, Stats., are applicable to all state officers and employes and there is no shown legislative intent that subsection (2) or the rules promulgated thereunder should be limited to employes in the classified service.
Section 16.03 (6), Stats., requires the Director of the Bureau of Personnel to promulgate rules for the effective operation of secs. 16.01 — 16.38, Stats. Section 16.08, Stats., divides the civil service into the unclassified service and the classified service. It is noted that under sec. 16.08 (8), Stats., the Director shall audit the payrolls of the classified and unclassified service, as necessary, to carry out the provisions of the subchapter. Many of the provisions of secs. 16.01 — 16.38, Stats., are applicable to the unclassified service. In 52 OAG 78 (1963) it was stated that the provision of sec. 16.275, now sec. 16.30, Stats., relating to holidays, office hours for offices and standard work week were generally applicable to both classified and unclassified personnel. Also see discussion in 55 OAG 91 (1966).
In implementation of sec. 20.916 (2), as contained in the 1969 Statutes, the Director promulgated the following rule:
"Pers 5.15 Employment interview travel expenses. As provided by subsection 20.916 (2), Wis. Stats., an applicant who is eligible for selection for employment may be reimbursed for all or part of his actual and necessary travel expenses incurred in connection with an employment interview by the employing department provided:
(1) The position is of a professional or technical nature, and
(2) A critical shortage exists of persons eligible for selection, and
(3) Prior authorization for such reimbursement has been obtained from the director."
Pursuant to sec. 20.916 (2), Stats., as amended by ch. 270, Laws of 1972, the above rule was superseded effective November 1, 1972, by:
"Pers 5.13 Reimbursement for applicant's travel expenses. As provided by section 20.916 (2), Wis. Stats., an applicant may be *Page 8 
reimbursed for all or part of his or her actual, reasonable and necessary travel expenses consistent with the applicable provisions of section 20.916, Wis. Stats., and any regulations prescribed thereunder, which are incurred in connection with reporting for an oral examination or employment interview by the employing agency, provided the director, upon request of the appointing authority, determines that reimbursement for expenses is a necessary part of the effective recruitment process and prior authorization for such reimbursement has been given to each applicant to be reimbursed before the expenses are incurred."
With the possible exception of legislators, secs. 20.916 and 16.535, Stats., are the only statutes relating to reimbursement for travel expenses of state officers and employes, both classified and unclassified, and applicants for state positions.
Section 20.917, Stats., does provide for reimbursement to employes of expenses necessarily incurred as moving expenses and it is noted that the legislature expressly provided "for transporting himself and the immediate members of his family to his new place of residence."
If the legislature had intended a similar provision to apply to sec. 20.916 (2), Stats., it would have so provided by express language.
Section 20.916 (6), Stats., provides:
"(6) Payment for unauthorized travel prohibited. The payment of travel expenses not authorized by statute is prohibited. Any unauthorized payment made shall be recoverable as for debt from the person to whom made." (Emphasis added)
I construe this provision as prohibiting payment of travel expenses, except as provided by statute, to apply to state officers, employes and applicants for state positions. For reasons hereinafter stated I am of the opinion that it does not prohibit the payment of travel expenses to persons other thanapplicants, state officers or employes, where authorized by the University of Wisconsin Regents acting under authority of sec. 36.065, Stats., where express provisions of a trust permit such payment or where unrestricted gift funds are involved and the Regents in their discretion determine that payment is for the benefit and advantage of the university. *Page 9 
Your further questions as renumbered are:
"3. May the University of Wisconsin Board of Regents accept a gift, the purpose of which at the time of acceptance is known to be in conflict with other statutes?
"4. May unrestricted gifts be used for paying expenses of a prospective employe's wife who accompanies her husband on a trip made for purposes of an employment interview?
"5. If your answer to question 4 is yes, are there any limitations or restrictions on the use of funds received as gifts, or may they be expended without regard to any other statutory provisions except those relating specifically to gifts and grants?"
With respect to your third question I am of the opinion that the Board of Regents does not have authority to accept a gift or trust, the purpose of which at the time of acceptance is known to be in conflict with other statutes in the sense that the purpose is unlawful. If the unlawful portion is separable, however, it will not invalidate the entire gift or trust and the same may be accepted and shall be deemed legal under sec. 36.065 (1), Stats.
In 54 Am. Jur. Trusts § 21 p. 38 it is stated:
"* * * the rule of the modern law is that where the purpose of a trust is to circumvent a statutory provision or is to defeat public policy, it is void and of no effect. A fortiori, criminality of purpose voids a trust. In other words, a trust must have lawful subject matter."
At § 24, p. 39 of the same text it is stated that partial invalidity of one or more portions of the terms of a trust does not invalidate the trust if the invalid provisions are not material, are separable and not inconsistent with the trustor's paramount intention.
The state treasurer has custody of all gifts, grants, bequests and devises in the form of cash and securities. Sec. 20.907 (2), Stats. Sections 20.906, 36.03 and 36.10, Stats., require all moneys collected or received by any person for or in behalf of the University of Wisconsin to be deposited in the state treasury. Section 36.03, Stats., provides that moneys can only be paid out upon warrant of the Department of Administration "as provided by law." Sections 20.285 (1) (a) and (w) appropriate to the University all moneys *Page 10 
received as trust fund income under sec. 36.03, and all moneys available for university trust fund operations pursuant to sec.36.03, Stats.
Section 20.285 (1) (k), Stats., appropriates to the University:
"(k) Gifts and donations. All moneys received from gifts, grants, bequests and devises, to carry out the purposes for which made and received."
All gifts, grants, bequests and devises received by the regents, the president or any officer of the university for the benefit or advantage of the university under secs. 36.03. 36.065, Stats., become the property of the state. As stated in 26 OAG 626, 628, 629 (1937):
"Immediately upon the acceptance of the trust, * * * the board of regents became a trustee of the fund and the beneficial interest vested in the people of the state of Wisconsin in other words, the beneficial interest became the property of the state. As in the case of other property of the state, no use may be made of it other than such as is specifically authorized by the statutes."
In Will of Gabel (1954), 267 Wis. 208, 211, 212, 64 N.W.2d 853, it is stated:
"A trustee must execute the trust according to law although the will confers the broadest discretionary powers."
Section 20.907, Stats., is the general statute applicable to gifts and grants to the state and its agencies. Section 36.065, Stats., is a special statute governing gifts and grants to the University of Wisconsin and subsection (1) provides:
"(1) All gifts, grants, bequests and devises for the benefit oradvantage of the university or any of its departments, colleges. schools, halls, observatories or institutions, or to provide any means of instruction, illustration or knowledge in connection therewith, whether made to trustees or otherwise, shall be legal and valid and shall be executed and enforced according to the provisions of the instrument making the same, including allprovisions and directions in any such instrument for accumulationof the income of any fund or rents and profits of and real estatewithout being subject to the limitations and restrictionsprovided by law in other cases; but no such accumulation shall be allowed to produce a fund *Page 11 
more than 20 times as great as that originally given. When such gifts, grants, bequests or devises include common stocks or other investments which are not authorized by ch. 320, the regents areauthorized to continue to hold such common stocks or otherinvestments and to exchange, invest or reinvest the funds in suchgift, grant, bequest or devise in similar types of investmentswithout being subject to the limitations and restrictionsprovided by law in other cases. Except as otherwise provided in this section, the regents may invest not to exceed 75 per cent of trust funds held and administered by them in common stocks, the limitation of 50 per cent in s. 320.01 (2) to the contrary notwithstanding." (Emphasis added)
The language emphasized above also appears in almost identical form in sec. 20.907 (1), Stats.
I am of the opinion that the phrase "without being subject to the limitations and restrictions provided by law in other cases" applies only to the holding, exchanging, investment and reinvestment of such funds and does not go to the execution of the trust by the Regents. Execution of the trust, whether restricted or unrestricted funds are involved, must be in a lawful manner not in conflict with other express statutes.
Our Supreme Court has stated that gifts to the university can only be made for, and used for, lawful and legitimate purposes. Gifts made for unlawful purposes "would not be for the benefit ofthe university."
Glendale Development v. Board of Regents (1960), 12 Wis.2d 120,139, 106 N.W.2d 430, cert. denied 81 S.Ct. 1652, 366 U.S. 931,6 L.ed. 2d 389.
In Glendale the court stated at pp. 138, 139:
"There is no doubt but that the anonymous donors of the money to the Board of Regents desired that it should be used by the Board of Regents in any legitimate manner and in it discretion, so long as it was for the benefit of the university.
"There can be no doubt that the donors by the terms of their gift and later by their consent desired the Board of Regents to use its discretion as to how the money was to be spent so long as it was for *Page 12 
the benefit of the work of the university. Counsel argues that any and all fantastic and illegitimate enterprises might be fostered. Likewise, it must be written into this gift, that the donors intended only lawful and legitimate enterprises — others would not be for the benefit of the university.
"While the funds were public funds in a general sense, they were funds earmarked for such purposes as the Board of Regents, in its discretion, deemed proper, so long as they were for the benefit of the university.
"Many gifts are given to the university for various purposes and are earmarked for the same. Of course, they are public funds belonging to the public in a general sense, but certainly are to be used for the purposes given. Here the purposes were placed in the discretion of the Regents. The Regents of the university receive many gifts from corporations and individuals, to be used for a given purpose. All such gifts when accepted must be used in the manner provided by the articles of donation."
In answer to your fourth question I am of the opinion that unrestricted gifts may not be used to reimburse an applicant for expenses incurred by his wife in accompanying her husband on a trip made for the purpose of interviewing for a state position since sec. 20.916 (1), Stats., and the rules promulgated thereunder provide for reimbursement for job applicants and I construe sec. 29.916 (6), Stats., as prohibiting the payment of travel expenses to state officers, employes or applicants except as authorized by statute. I am of the further opinion, however, that payment of such travel expenses could be made to the wife, if she were in fact requested to accompany her husband for the job interview by the appointing authority, where the Regents in their discretion determine that payment is for the benefit and advantage of the university.
With respect to your fifth question the following additional guidelines may be helpful.
In the execution of their trust responsibilities, where there is an express trust instrument, the Regents are required to execute according to the provisions of the instrument only to the extent that they can do so without violating any prohibitory statute. They must *Page 13 
comply with general or special statutes relating to the expenditure, accounting, and auditing of university and state funds.
You refer to a grant made by the "X" publishing company to a department at the university for the use of a professor in the preparation of a book. In part the grant states:
"[X] is making this grant under the condition that it can be dispersed without regard to the fiscal procedures and policies of the University of Wisconsin or of the State of Wisconsin. [Prof. X] is to use the grant at his own discretion."
The university accepted the fund and treated it as unrestricted. If the grant was valid, under sec. 36.065 (1), Stats., which makes all gifts, etc. "legal and valid," the condition was illegal and unenforceable. Any gifts or grants must be subject to the fiscal procedures and policies of the university and the state. The donor, without the consent of the Regents, cannot place total discretionary power over use of a grant in a given professor. Discretion, within reasonable and lawful limits, is in the Regents but may be delegated.
You also enclose guidelines for Ford Foundation grants and direct my attention to travel allowance regulations which specify "* * * The Foundation traveler is reimbursed at the rate of twelve cents per mile which includes charges for tolls and parking."
Where a state employe, faculty member, or officer is involved, this provision may conflict with state statutes as sec. 20.916
(4) (a) specifies a rate of 10 cents for the first 400 miles and 7 cents for each mile thereafter and the rules promulgated thereunder permit reimbursement for parking charges. In view of sec. 20.916 (6), Stats., reimbursement of state employes, faculty members or officers should be made at the rates specified in sec.20.916, Stats.
On the other hand the Ford Foundation guidelines permit reimbursement for meals for guests of the Foundation. Such expenses are not necessarily travel expenses of a state employe, faculty member or state officer, are neither provided for nor prohibited by sec. 20.916, Stats., and could be paid from Ford Foundation grants when approved by the university.
In general, where unrestricted trust funds are involved, the Regents may authorize their expenditure with broad discretion as *Page 14 
long as the purpose is lawful and for a legitimate purpose and for the benefit of the university. Subsections (2) and (3) of sec. 36.065, Stats., outline areas in which the Regents may exercise their discretion. In exercising their discretion they must use their best judgment for the benefit of the university, cannot expend money for purposes expressly prohibited by statute and must comply with general or special statutes relating to the expenditure, accounting, and auditing of university and state funds.
Whereas the Regents may delegate their discretion in the expenditure of unrestricted funds, such delegation must be reasonable. It is submitted that certain of the guidelines referred to above, especially those items 3, 4, 5, 6, 7 are so broad that they do not set forth any standard and do not therefore constitute a valid delegation. If expenditures are to be considered in these areas, they should be specifically approved by the entire board until a more meaningful set of guidelines is approved and issued by the entire board.
RWW:RJV