PEEJAY CORPORATION, a corporation of the State of New Jersey, complainant-appellant,

*v.*

THE CITY OF NEWARK, a municipal corporation, and RALPH A. VILLANI, defendants-respondents.

Argued May term, 1944.   Decided November 30th, 1944.

*Mr. Louis Spiegel,* for the appellant.

*Mr. Philip J. Schotland* (*Mr. Louis A. Fast,* of counsel), for the respondents.

The opinion of the court was delivered by

COLIE, J.

Peejay Corporation appeals from a decree of the Court of Chancery dismissing the bill of complaint filed by it against the City of Newark and Ralph A. Villani, Director of Parks and Public Property, one of the city commissioners. The bill sought specific performance of an allegedly valid lease of the premises, together with prayers for incidental relief, unnecessary to enumerate.

The facts are that Peejay Corporation operated the Farmers' Market in the City of Newark under a five year written lease with the municipality. By its terms, the lease was to expire on January 15th, 1944, and approximately six months prior thereto, the corporation commenced negotiations to renew for a similar term at the same rental. Mr. Villani, as Direc-

tor of Parks and Public Property, or someone on his behalf, conducted the negotiations for the City of Newark and it is apparent that the parties came to an agreement as to the terms of the renewal, for, on December 29th, 1943, the commissioners passed a resolution, signed by all of its members, including Mr. Villani. That resolution so far as pertinent to the disposition of this appeal, reads:

"Whereas: The Peejay Corporation is desirous of having the lease extended for a period of five years at the same rental of $5,000.00 per annum, a copy of which is hereto attached and made a part hereof; and

"Whereas: The said extension of the lease meets with the approval of the Director of the Department of Parks and Public Property;

"Now, therefore, be it resolved: By the Board of Commissioners of the City of Newark, that the Director of the Department of Parks and Public Property be and he is hereby authorized to extend the term of the aforesaid lease, * * *."

Attached to and specifically made a part of the aforesaid resolution was an extension agreement containing a covenant that "the terms, conditions and covenants of aforesaid lease shall apply to the extended term as provided herein, and nothing herein shall be deemed to change the terms thereof, except as to the term thereof is [as] hereby extended." The city then advised Peejay Corporation that the agreement was ready for execution and it was signed by the properly authorized officers of the corporation and the executed copies delivered to the executive clerk of Mr. Villani's department. On January 17th, 1944, two days after the old lease had expired and while the corporation was in possession of the premises, Mr. Villani wrote to appellant advising it that he had received a written offer for a five year lease of the premises at a rental of $500 per year higher than that which Peejay Corporation had agreed to pay and therefore he would "advertise the property for lease and let the highest responsible bidder have the lease." This action prompted the filing of the bill of complaint.

The question for determination is whether there arose out of the stated facts a contract which could be specifically enforced in a court of equity.

Examining the resolution of December 29th, 1943, we find that it approves the precise terms upon which the lease was to be renewed. This is patent from its recital that "a copy of which [the renewal agreement] is attached hereto and made a part hereof." This settles beyond question that there remained no phases in treaty as to which the Director of Parks and Public Property might exercise his discretion. This is further borne out by the recital that "The said extension meets with the approval of the Director of the Department of Parks and Public Property." These recitals are followed by the resolving clause "that the Director of Parks and Public Property be and he is hereby authorized to extend the term of the aforesaid lease * * *." The court below, in an unreported opinion, described this as "a mere authorization to Mr. Villani to execute the lease. It left him the discretion whether or not to do so." With this interpretation we cannot agree. Mr. Villani and Peejay Corporation negotiated and came to terms on all particulars relating to the renewal of the lease. Then the matter was considered by the city commission, Mr. Villani's approval noted, and the full commission signed the resolution.

It seems inconsistent for the unanimous commission to have acted favorably upon the proposed lease, approved by one of their fellow-commissioners, to have authorized him to extend the lease and simultaneously to have invested him with the power, in his discretion, to nullify the effect of that formal resolution. If the matter was to rest in the discretion of the Director of Parks and Public Property there was no necessity for the passing of the resolution. To accept the interpretation of the court below makes the action of the city commissioners meaningless. Our view is that after the resolution was passed and the leases were prepared, executed, and returned to the city by Peejay Corporation, there remained but a single duty for the Director of Parks and Public Property to perform, namely, the ministerial act of signing the leases.

The respondents strenuously urge in support of the decree of dismissal that the transactions detailed above do not meet the requirements of the statute of frauds. The argument

is grounded upon the assumption that *R. S. 25:1–1* controls the instant case. It reads:

> "All leases, estates, interests of freehold or term of years, or any uncertain interests of, in, to or out of any real estate heretofore or hereafter made or created by livery of seizin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, have any other or greater force or effect, any consideration for making any such parol leases, estates or interests notwithstanding.
>
> "This section shall not apply to leases not exceeding the term of three years from the making thereof."

Assuming that the quoted section of the statute is controlling, still the position of the respondents is untenable. A municipal corporation acting within the limits of the powers conferred upon it by the legislature, is controlled by the same rules of the law of contracts as are individuals and private corporations. *Frank v. Board of Education of Jersey City, 90 N. J. Law 273* (at *p. 279*). The action of the city commission in signing the resolution of December 29th, 1943, and preparing and forwarding the renewal leases to the corporation was an offer upon the part of the city. The signing of the leases and their return to the city was an acceptance of the city's offer and constituted a contract binding upon both parties, unless, as urged by respondents, the requirements of the statute of frauds have not been met. We conclude that they have been met. *R. S. 25:1–5* provides that no action shall be brought upon an agreement respecting any interest in real estate "unless the agreement of promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized." The resolution passed by the city and signed by the commissioners is a sufficient note or memorandum to satisfy the requirement of *R. S. 25:1–5. Buckley v. Mayor, &c., of Jersey City, 105 N. J. Eq. 470; affirmed, 107 N. J. Eq. 137.* In that case Vice-Chancellor Lewis, whose opinion was adopted in this court, said (at

*p. 478)* : "its [the municipality's] agreements are rarely oral, but simultaneously with their making, are, on the instant of formation, put into writing, and thus a note or memorandum of them is made in said minutes, which being signed·by the clerk in charge thereof, constitutes a note or memorandum, made by it, by its duly authorized agent, sufficient to comply with the requirements of the statute of frauds."

In support of this proposition there are cited numerous authorities, to which may be added : *Browne on the Statute of Frauds (3d ed.),* § *351; 8 Am. & Eng. Encycl. of Law (1st ed.) 711; 37 C. J. S. 654* § *176.*

In short, there was a contract between the complainant and respondent City of Newark which the municipality was without legal justification to break. For the reasons stated, the decree under appeal is reversed.

*For affirmance*—THE CHIEF-JUSTICE, DONGES, WELLS, HAGUE, JJ. 4.

*For reversal*—PARKER, CASE, BODINE, PERSKIE, PORTER, COLIE, RAFFERTY, DILL, JJ. 8.