22 N.J. Super. 494 (1952)
92 A.2d 396
THE TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN NEWARK, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
THE HOWARD COMPANY-JEWELERS, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided November 7, 1952.
*495 Before Judges JAYNE, PROCTOR and SCHETTINO.
Mr. Herman J. Harris argued the cause for the appellant (Messrs. Osborne, Cornish & Scheck, attorneys).
Mr. Everett M. Scherer argued the cause for respondent (Messrs. Riker, Emery & Danzig, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C.
This is an appeal from a judgment entered on the verdict of the trial judge, sitting without a jury.
Plaintiff's thesis is that the parties entered into a contract of lease between plaintiff as landlord and defendant as tenant. Defendant contends the negotiations did not reach a contractual stage but rather were a preliminary understanding as to some terms of a contemplated formal lease which was never fully agreed upon or executed. The trial court found *496 for plaintiff and awarded as damages the loss of rental for the period between the date of commencement of the term of the alleged lease and the date of reletting to a third party, plus the brokerage commissions for which plaintiff claims to be liable in connection with the lease to defendant and attorney's fees connected with that transaction. Defendant challenges the inclusion of the brokerage commission as an element of damages but we need not pursue that issue because of our views with respect to the issue of liability.
The facts are these: The premises were occupied by I. Hausman & Sons, Inc., under a lease which was to expire on April 30, 1952. Hausman desired to terminate the lease and approached Ralph G. Schwebemeyer & Co., representatives of plaintiff, for that purpose. Negotiations between Mr. Schwebemeyer and Mr. Linder, defendant's president, followed. Schwebemeyer and Linder drafted the following proposal dated May 2, 1950 addressed to Schwebemeyer:
"Succeeding our numerous discussions of the subject together, we now advise that we are prepared to enter into a lease for the store premises and basement at 813 Broad Street, Newark, New Jersey, formerly occupied by Hausman Shoes, provided we can do so on the following basis:
1) The lease term to be six (6) years and eleven (11) months to commence on June 1, 1950 and to terminate on April 30, 1957.
2) Premises to be devoted to the sale at retail of jewelry and optical goods, men's and women's ready-to-wear and furs, and appliances such as radios, television sets, refrigerators, washing machines, vacuum cleaners, deep freezers, etc.
We agree to pay rental based upon 6% of merchandise sales covering items of jewelry and optical goods and men's and women's wear and furs and a percentage of 3% of the aggregate sales of all items under the appliance category, against which we will pay the following minimum guaranteed rentals:
1) During the first year and 11 months  from June 1, 1950 to April 30, 1952  at the annual minimum rental of $18,000. payable monthly.
2) During the next two-year period  from May 1, 1952 to April 30, 1954  at the annual minimum rental of $20,000. payable monthly.
3) During the next three-year period  from May 1, 1954 to April 30, 1957  at the annual minimum rental of $23,000. payable monthly.
It is our understanding that a termination of the Hausman lease can be effected to the end that we become the direct tenant of the *497 ownership and it is further contemplated that we take the premises in their existing condition and adapt them to our needs and purposes at our own expense.
You have advised us that the landlord will furnish heat and water for sanitary purposes; we, however, understand that all water for other purposes as well as electric current shall be metered to us at our expense.
It is our further understanding that we shall be required to carry plate glass insurance and public liability insurance in limits of $50,000., $100,000. for the benefit of the landlord.
If this proposal be approved, it is our intention to take a lease in the name of The Howard Company, Jewelers, a corporation of New Jersey. We have been in business in Newark for upward of 25 years and maintain our principal corporate address at 847 Broad Street, Newark, New Jersey.
Inasmuch as we are now in process of deciding upon our future course of action, it is essential that we have your early advice with respect to the foregoing."
At a special meeting of plaintiff's trustees on May 4, 1950 Schwebemeyer transmitted that writing and plaintiff's trustees passed the following resolution:
"In regard to 807-13 Broad Street, Mr. Schwebemeyer was admitted to the meeting. After reporting and answering all questions, it was moved and passed that we reject the offer of the tenant that Hausman has for 807-13 Broad Street. Motion was passed that we accept the exchange of releases between Hausman and the Trustees as Hausman offers, subject to any overages on % sales previous to Hausman vacating.
Mr. Schwebemeyer presented to the meeting a proposal made by the Howard Company dated May 2, 1950, to lease the store and basement at 813 Broad Street. After full consideration, upon motion made, seconded, and unanimously adopted, the Trustees accepted the proposal and authorized Mr. Schwebemeyer to request Mr. Irving Riker to prepare leases embodying the terms of the proposal; a copy of the proposal to be attached to and made part of the minutes."
Schwebemeyer testified that on the same day he advised Linder that defendant's offer had been accepted. On May 11, 1950 plaintiff released Hausman. By letter of that date Schwebemeyer forwarded to Mr. Scheck, attorney for defendant, a form of lease prepared by plaintiff's attorney. The letter of transmittal reads:
*498 "I am pleased to transmit to you herewith the proposed lease in duplicate, between the Trustees of First Presbyterian Church and the Howard Company; all as heretofore discussed.
Should you like me to do so, I will be glad to join you in a consideration of its contents at your convenience."
Schwebemeyer testified Scheck asked if the proposed form of lease could be changed to permit concessionaires or sub-lessees to which Schwebemeyer replied that if the suggestion were crystallized he would take it up with plaintiff. Scheck testified and Schwebemeyer denied that upon receipt of the form of lease he protested that it was a "far cry" from the proposal of May 2, 1950. The record does not reveal any further discussion of the terms of the submitted form of lease but rather that on May 15, 1950 Scheck told Schwebemeyer that Linder was ill and having been advised to retire from business could give no further consideration to the matter. There was a dispute between Schwebemeyer and Scheck as to whether Scheck used terminology indicating that he deemed his client to be already bound. Mr. Riker, attorney for plaintiff, testified that Scheck consistently denied there was a binding agreement between the parties, whereas Riker just as consistently maintained that there was.
The form of lease submitted by plaintiff admittedly contains provisions not included in the proposal of May 2. Plaintiff argues there was already a binding contract and that at most the form of lease was a proposal for a modification of the contract, the submission of which did not impair the existing obligation. If the hypothesis that a contract already existed were true, plaintiff's position could of course be legally tenable but we find difficulty with the hypothesis.
Plaintiff urges that the issue is one of fact which, although reviewable on appeal under Rule 1:2-20(a), should not be disturbed in view of the injunction to give "due regard * * * to the opportunity of the trial court to judge of the credibility of the witnesses." Whether the issue amounts to a question of law or of fact or of mixed law and fact, we need not determine, since we are satisfied the undisputed *499 facts require upon any approach the conclusion that the parties did not intend a binding contract by the initial proposal and the action of the trustees.
The property is a valuable holding on Broad Street, Newark. The rental is sizeable. The term is relatively long. We think it inconceivable that either party intended a binding contract embracing only the terms contained in the proposal of May 2. The fair import of the language in the proposal that defendant was "prepared to enter into a lease" and "to take a lease," considered in the light of the circumstances just mentioned, is that defendant was ready to negotiate with respect to the other provisions which are customarily involved in negotiations of important leaseholds. The resolution of the trustees directed plaintiff's attorney "to prepare leases embodying the terms of the proposal." Thus plaintiff also contemplated a formal lease and the form which its attorney submitted pursuant to those instructions embodies numerous provisions beyond those contained in the proposal. Let us consider some of them.
The proposal contemplated defendant would alter to suit defendant's needs. The form of lease requires the landlord's consent in writing to alterations, additions, or improvements.
The proposal is silent as to duty to repair. The form of lease would require the tenant to make all repairs to the store front, display windows, entrance and the interior of the premises, including an elevator in the demised premises as to which the landlord reserved a right to use, and further provided the landlord would make structural, heating and plumbing repairs, except as to any air conditioning system which the tenant might install.
The form of lease would prohibit assignment or subletting but would permit the tenant to give concessions or licenses "for the sale of some of the aforesaid merchandise" described in the provision respecting the permitted use of the demised premises, but did not specify which items of merchandise could be subject to concessions or licenses.
*500 The form of lease provides the leasehold interest shall be subordinate to any mortgage which might thereafter be placed on the property and without limitation as to amount.
The form of lease provides the lease shall end if there shall be fire damage which the landlord shall decide not to repair. It further provides that if the landlord shall be unable to obtain fire insurance in an amount and form and in companies acceptable to it, the landlord may on three days' notice in writing terminate the lease.
The form of lease provides the landlord would be released from liability with respect to water damage due to "breakage, leakage, or obstruction of the water or soil pipes, or other leakage in or about the said building."
The form of lease contains a provision giving the landlord the right to terminate upon five days' notice to make good a default upon the happening of any one of a number of events including the property becoming vacated, the mortgage or assignment of the lease, the breach of any covenant and the filing of a petition in bankruptcy. Another provision continues the tenant's liability for rent in case of re-entry by the landlord.
We have selected some of the provisions which a landlord might deem vital but as to which a tenant might either object completely or insist upon modification. We cannot so divorce ourselves from practical experience to assume that these provisions are routine, customary, or beyond the realm of differences of view in negotiations respecting important leaseholds. Hence we cannot accept the trial court's finding and plaintiff's contention that such provisions are "casual and incidental provisions commonly present in a formal and conventional agreement which the parties contemplate shall in due course be prepared and executed."
Plaintiff emphasizes the circumstances that the transaction collapsed because of Linder's illness. But we do not think that any controlling inference can be drawn from that circumstance. Schwebemeyer admitted that Scheck did raise at least one question and the situation is equally compatible *501 with the premise that by reason of Linder's illness it was pointless to enter into a discussion of other provisions. It may be that but for Linder's illness the parties would have reached an agreement but plaintiff's asserted claim is solely contractual and must stand or fall on the premise that the proposal of May 2 and the trustees' resolution, as communicated to Linder, constituted a contract. If there was no contract at that point, Linder's subsequent acquiescence in the terms of the form of lease would not give to the earlier events the status of a contract nor in itself result in a later contract based upon the form of lease submitted, because obviously if there was no contract on May 4, the parties surely did not contemplate that oral approval, without signature to the submitted form of lease, would create a binding contract of lease. Plaintiff argues its action in releasing Hausman evinces an understanding by it that it was bound by the events of May 4; but the release may be consonant with business hope, and in any event there is no suggestion of any participation by Linder in the Hausman release which would indicate that Linder intended defendant to be bound before a lease was fully agreed upon and executed. These circumstances cannot overcome those already alluded to which convince us that neither party intended a contract until the many terms involved in such lettings were agreed upon and embodied in an executed writing.
Plaintiff cites a number of cases to support its view. Most of these cases involve sales of real property in which transactions the terms are usually few in number as distinguished from agreements of lease which involve many provisions consequent upon the continuing relations of the parties over a period of years. For example, in Moran v. Fifteenth Ward B. & L. Ass'n., 131 N.J. Eq. 361 (Ch. 1942), involving a sale of realty, the terms which were not expressed in the writing and which the defendant asserted to be vital and to negate the existence of a binding agreement, were supplied by rules of law applicable to such transactions. No such suggestion can possibly be made with respect to the lease here *502 asserted. Compare Farmer v. Davies, 97 N.J.L. 309 (E. & A. 1921) in which it was held that an agreement calling for a lease upon terms making no reference to assignment or subletting was not met by a proposed agreement of the lease which prohibited assignment or subletting without the consent of landlord. In Volk v. Atlantic Acceptance & Realty Co., 139 N.J. Eq. 171 (Ch. 1947), affirmed 141 N.J. Eq. 364 (E. & A. 1948), the option to buy, contained in a lease, was found to be complete in all of its essential and material terms and to have been intended by the parties to be obligatory without more. Nor is Peejay Corporation v. The City of Newark, 136 N.J. Eq. 31 (E. & A. 1944), helpful to plaintiff. The agreement was one for the renewal of an existing written lease upon the terms, conditions and covenants of the original lease. In such situations, it may readily be found that although the agreement to renew contemplated a formal contract of renewal, yet the parties negotiated and came to terms on all particulars relating to the renewal of the lease and the formal writing was intended merely to embody a contract already made and binding.
The ultimate question in these situations is whether the parties intended the events to constitute a contract immediately binding. Fundamentally two subsidiary questions may be involved: (a) whether the parties agreed upon all of the terms, and (b) if they did, whether they intended an obligation to arise only upon the execution of a formal writing. Burlew v. Hepps, 6 N.J. Super. 16 (App. Div. 1949). In the present case, plaintiff's proofs fall short of satisfying even the first requirement. As we have said, we think the parties had not on May 4, agreed upon all of the essential and material terms and further negotiations were necessarily contemplated by them. And in the circumstances of the case, we believe also that the parties did not intend in any event to be bound until a writing embodying all of the terms including those yet to be negotiated was executed by the parties.
*503 Judgment is reversed and, since nothing would be gained by a retrial, judgment is entered in favor of defendant but without costs. Rules 1:4-9(b) and 4:4-6(b).