Allegheny County Port Authority *v.* Flaherty.

136

Argued June 6, 1972, before Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. President Judge Bowman did not participate.

*Gary H. McQuone,* with him *Ruffin, Hazlett, Perry and Lonergan,* for appellant.

*Frederick A. Boehm,* First Assistant City Solicitor, with him *Eugene B. Strassburger, III,* Executive Assistant City Solicitor, *Daniel M. Curtin,* Assistant City

Solicitor, and *Ralph Lynch, Jr.*, City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, July 17, 1972:

The Port Authority of Allegheny County (Authority) here sought judgment in mandamus compelling the mayor of the City of Pittsburgh to execute deeds conveying to the Authority certain premises in which the city has an interest. The premises are (1) a property included between parallel planes, each 33 feet wide, located respectively 826.08 and 854.25 feet above sea level, being an unused railway tunnel, and (2) a parcel adjacent to the unused railway tunnel, in the form of a parallelogram, containing 1358 square feet and lying between the tunnel and the tracks of the Penn Central Railroad. The deed of the first described property would convey "[a]ll of the interest of the City of Pittsburgh only" in the unused tunnel property. The deed for the second described property would grant a perpetual easement for the purpose of the erection by the Authority of an aerial structure for a rapid transit system. The parties agree that the city's title to the tunnel property was acquired at sheriff's sales, presumably upon municipal claims, and at treasurer's sales for delinquent taxes due the city and allegedly the Pittsburgh School District and the County of Allegheny. The small parcel at the tunnel entrance is part of a 52 acre tract conveyed to the city by a railroad company in 1959, subject to a covenant by the city that the tract should be used only as a public park and further subject to a right of reentry by the railroad company and reversion of title upon breach of the covenant.

The deeds were presented to the mayor for execution by him pursuant to ordinances of City Council directing such execution by him and the Director of

Lands and Buildings on behalf of the city.[1] Indeed, the ordinances were twice adopted, the second time by two thirds of council over the mayor's veto.[2] The mayor's veto of the first enactment was accompanied by a statement of his objection *which objection did not include any of the matters raised in this suit in justification for his refusal to execute the deeds as directed by the ordinances.*

The defendant mayor refused to execute the deeds and asserted in his Answer and New Matter the following interrelated reasons why he should not be compelled to do so by the judiciary: (1) that the city is trustee for the school district and Allegheny County, having obtained title at treasurer's or sheriff's sales for delinquent taxes or municipal claims due them as well as the city, and that the city may not convey the interests of others, and (2) that he has power to refuse to execute such assertedly invalid deeds.[3] The plaintiff filed its Reply to New Matter and then moved for summary judgment pursuant to Pa. R. C. P. No. 1098, authorizing such a judgment in mandamus. The court below issued a rule upon the defendant to show cause why the judgment should not be entered and the matter was set down for hearing. By the time of hearing almost four months had passed since the complaint was filed and almost three months since the filing of defendant's Answer and New Matter. By some means

---

[1] This direction as to the persons to execute deeds was seemingly made conformably to Section 1 of Art. XV of the Act of March 7, 1901, P. L. 20, as amended, 53 P.S. §23302, requiring all contracts of the city to be executed by the mayor and head of the proper department.

[2] Section 10 of Art. XIV of the Act of March 7, 1901, 53 P.S. §22230.

[3] The defendant has abandoned a defense raised in his Answer and New Matter that the second enactments were ineffective to override his veto for procedural reasons.

or in some fashion not disclosed on the record, the plaintiff's motion for judgment was converted from an application under Pa. R. C. P. No. 1098 to a motion for summary judgment pursuant to Pa. R. C. P. No. 1035. The parties here agree that the motion was treated by them and the court as one pursuant to Pa. R. C. P. No. 1035 and the facts that a hearing was scheduled, affidavits filed and judgment eventually given to the nonmoving party all so indicate. We will so treat it.

As noted, the plaintiff filed affidavits, but no depositions or interrogatories or other evidential things were made a part of the record. However, it is represented to us by the plaintiff without contradiction by the defendant, that, after the hearing and before the court below entered its judgment, there was provided to it a copy of an executed quitclaim deed conveying Allegheny County's interest in the tunnel to the Authority and a copy of a resolution of the school district releasing its interest, if any, in the same property to the Authority, with deed to follow.

The court below entered judgment for the defendant upon three general considerations, two of which were not raised by the pleadings. It held that the mayor should not be required to execute the deed for the tunnel because the city is trustee for the school district and the county, that as such the city could not divest the interest of those entities, and that in any case it was required to obtain court approval for a conveyance of real property acquired at sheriff's or tax sales. It further held that the city owns the 1358 square feet property for park purposes only and has no power to convey it for any other purpose and that an attempt to do so will cause an immediate, "automatic" reverter of the whole 52 acre park property to the grantor's successor, the Penn Central Transporta-

tion Company. Lastly, it held that the ordinance and deed description of the 1358 square foot tract describes a meandering line, does not close, and therefore conveys nothing and that the mayor properly declined to sign it. The court erred on all counts.

First, the tunnel deed on its face purports to convey only the interest of the city. The city is empowered by Section 2, cl. III of Art. XIX of the Act of March 7, 1901, 53 P.S. §23102, to sell any real property owned by it (not dedicated to and used for public purposes)[4] without reference to the courts. Furthermore, even if the deed here purported to convey the interest of the school district and the county, the Act of July 5, 1947, P. L. 1258, as amended, 53 P.S. §26101 et seq., authorizes just such a conveyance without court approval, at least where, as here, the other taxing bodies are in agreement. Section 16 of that Act, 53 P.S. §26116, authorizes sale under the terms of the Act, and Sections 11, 12, 13 and 14, 53 P.S. §§26111, 26112, 26113 and 26114, provide for application to courts only when the city deems it necessary that the sale should be made free and clear of mortgages, ground rents, interests or other claims. That the Authority may here take title subject to such possible encumbrances, including unpaid taxes or municipal claims, has not the slightest effect upon the validity of the conveyance. Surely the owner of land may convey his property subject to liens and encumbrances to another willing to take title so encumbered.

---

[4] See as examples: The City of Pittsburgh v. The Epping-Carpenter Co., 194 Pa. 318, 45 A. 129 (1900); Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, 251 Pa. 115, 96 A. 123 (1915); Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, 251 Pa. 125, 96 A. 126 (1915), for the common law rule that a municipality may not, without statutory authority, relinquish public rights in property dedicated to and used for public purposes.

Additionally on this subject, the Act creating the plaintiff Authority specifically authorizes: "Any municipality or owner . . . to sell, lease, lend, grant, transfer or convey to the authority, with or without consideration, any facility or any part or parts thereof, or any interest in real or personal property which may be used by the authority in the construction, improvement, maintenance or operation of any facility." Section 13 of the Act of April 6, 1956, P. L. (1955) 1414, as amended, 55 P.S. §563. Whatever limitations might exist under the law otherwise upon the alienation of publicly owned property, however acquired, is thereby removed with respect to transfers of interests in real estate to this Authority.

To summarize: The deed in question conveys only the interest of the city; even if it purported to convey the interest of all taxing bodies having claims it would be valid, at least with the agreement, here existent, of such other taxing bodies, and in such case no court proceedings would be required unless a discharge of encumbrances were desired; and in any case, there is specific statutory authority for a transfer of real property to the plaintiff by the city, and for that matter the school district and county.

The court below held that the mayor should not be compelled to execute a deed for the 1358 square foot parcel adjoining the Penn Central Railroad tracks because, as we are able to understand it, the city held a fee simple defeasible which somehow inhibited its power to convey. The court wrote: "It is clear that all the city owns is a title in the described property limited in such a manner that the city may only use the property for park purposes and no other. This is the clear intent of the parties as expressed in the deed of conveyance as well as the legal import of the words contained in the conveyance. The city itself could not

use the described premises for operating a transit facility as contemplated in the Ordinance and the deed and what it cannot do itself it cannot grant the right to another to do." It goes on to say that if the mayor executed the deed an automatic reverter to the grantor would result. The conveyance to the city of the property of which this is a miniscule part did indeed create a fee simple defeasible; one not, however, subject to a special limitation causing automatic reverter, but rather subject to a condition subsequent conferring upon the grantor the power to terminate, but continuing until this power should be exercised. Restatement of Property §§16, 23 and 24 (1936). In any case, the mere conveyance to another public body could not bring about a reverter to the grantor's successor. The deed to the city refers to *use* for public park purposes. Finally, assuming an attempt by Penn Central to exercise its option to terminate, it is simply unreal to suppose that forfeiture of a 52 acre park could be incurred by the grant and use of an aerial easement for public transit over a portion containing in area six ten-thousandths of the whole or about three one-hundreths of an acre, located, moreover, at the very edge of the property. Conditions subsequent are abhorred by the law and so too are forfeitures upon condition subsequent. *Sapper v. Mathers*, 286 Pa. 364, 133 A. 565 (1926). *See generally* 4 Thompson on Real Estate §§1874, 1875, 1876, 1878, and 1884 (1961). *See also The Union Canal Co. v. Young*, 1 Wharton 410 (1836); *Plummer v. Neile*, 6 Watts & Sergeant 91 (1843); *McKissick v. Pickle*, 16 Pa. 140 (1851). Every case we have found, the facts of which remotely resemble those here, is authority for a holding that forfeiture in the circumstances here present would be out of the question. *Humphreys v. San Francisco*, 92 Cal. App. 69, 268 Pac. 388 (1928); *Codman v. Crocker*, 203 Mass.

146, 89 N.E. 177 (1909); *McKissick v. Pickle, supra; Skipper v. Davis*, 59 S.W. 2d 454 (Tex. Civ. App. 1932).

Again summarizing: the title of the city to the 52 acre park property is a fee simple defeasible upon condition subsequent which can be conveyed without forfeiture; forfeiture in any event could occur only by further action of the grantor or its successors; conditions subsequent and forfeitures sought thereby are not favored; and on the facts here, forfeiture, even if sought, is not a realistic possibility.

Finally, the court found the proposed deed of easement for the 1358 square feet parcel defective and therefore "invalid" because it believed that the description does not "close." In fact the description is perfectly adequate and it does close, assuming either to be a reason why a conveyance should be invalid. The only conceivable reason for the court's finding in this respect, is that one of the lines, rather than being described by degrees, minutes and seconds, is described as "east . . . on the Penn Central Railroad Company property line." The fact that the actual direction of this line might better have been described as southeast in no way impairs the adequacy of the description. A call for adjoiners takes precedence over metes and bounds and indeed a description referring only to adjoiners is wholly adequate. *Miller v. Cramer*, 190 Pa. 315, 42 A. 690 (1899); *Myer v. Curry*, 291 Pa. 145, 139 A. 731 (1927); *McGowan v. Bailey*, 155 Pa. 256, 25 A. 648 (1893); *Over v. Lindsay*, 255 Pa. 283, 99 A. 805 (1917).

We have dealt with all of the court's reasons for its entry of judgment for the defendant. The defendant has urged upon us the further defense that public streets are here sought to be conveyed by the city and that this it may not do. We assume that the refer-

ence here is to the tunnel property and that the streets alluded to are on the surface, some hundreds of feet above the tunnel. The answer is that streets are not to be conveyed here, but only subsurface rights. The city's interest is, and that of the Authority will be, subject to the public easement of the streets on the surface. The defendant does not contend that this conveyance or the use of the tunnel, past or future, has or will interfere with the public's use of the roads on the surface. Plainly the owner of land subject to easements for public streets may use his property under the easement for any purpose he chooses so long as the public's rights of travel are unaffected. *Scranton v. Peoples Coal Company*, 256 Pa. 332, 100 A. 818 (1917).

There is the suggestion here that the mayor may have some general discretion in the matter of the execution of deeds directed by ordinance of council. Obviously the conveyance of property of the city is a legislative act. Just as obviously the execution of deeds pursuant to duly enacted legislation is, unless there is statutory provision to the contrary, purely ministerial. 10 McQuillin, Municipal Corporations §28.44 (b) (3rd Ed. 1966). To hold otherwise would confer upon the mayor, in addition to his statutory veto power the power to render every councilmanic action requiring his signature nugatory and indeed, as this lawsuit demonstrates, would confer on him a further and conclusive power to defeat programs of which he disapproves but with which the council desires to proceed. Some cases holding in circumstances similar to those here that the mere execution of documents legislatively authorized is ministerial, are: *Fields v. Town of Whitesburg*, 195 Ky. 688, 243 S.W. 930 (1922); *Commonwealth v. Williams*, 120 Ky. 314, 86 S.W. 553 (1905); *Peejay Corp. v. City of Newark*, 136 N.J. Eq. 31, 39 A. 2d 873 (1944); and *State ex rel. Historical Society v. Carroll*,

261 Wis. 6, 51 N.W. 2d 723 (1952). The statutes governing the City of Pittsburgh provide: (1) the legislative power is vested in council, Act of March 7, 1901, Art. XIV, §1, 53 P.S. §22221; (2) the city may sell and convey real property owned by the city, Act of March 7, 1901, Art. XIX, §2, 53 P.S. §23102; (3) it is the mayor's duty to execute and enforce city ordinances, Act of March 7, 1901, Art. I, §1, 53 P.S. §22187; (4) contracts shall be signed with name of the city by the mayor, Act of March 7, 1901, Art. XV, §1, 53 P.S. §23302. When these ordinances, now admitted to have been validly enacted, were adopted over the mayor's veto, his power over their implementation ended and he was thenceforth required by law to "execute and enforce" them, unless he could show some basic want of legislative power. In this he has failed.

The defendant cites *Commonwealth ex rel. v. Mayor of Lancaster*, 5 Watts 152 (1836) and *Commonwealth ex rel. Vandyke v. Henry*, 49 Pa. 530 (1865). In the first case the mayor refused to enforce an ordinance providing illegal payments to members of council and in the second the mayor would not execute a lease of coal belonging to the Girard Estate, of which the City of Philadelphia is testamentary trustee, to persons who had offered bribes to city functionaries to procure the lease. These and other cases cited by defendant hold only that the mayor may refuse to enforce plainly illegal ordinances or execute documents pruriently sought. Our conclusion being that the ordinances and deeds here in suit were within the Legislature's power to enact and otherwise proper, all of defendant's authorities are inapposite.

As may be gathered from this opinion, this litigation is far from a model of pleading, procedure or presentation. The Authority contends that under Pa. R. C. P. No. 1035, summary judgment may not be en-

146

tered in favor of a nonmoving party. We find no Pennsylvania appellate court decision. However, the overwhelming weight of authority under the Federal Rule of which Pa. R. C. P. No. 1035 is a substantial copy, Fed. R. Civ. P. 56, is that in a proper case summary judgment may indeed be entered in favor of a nonmoving party. *See* 6 Moore, Federal Practice ¶56.12 (2d ed. 1971); Moore, Manual of Federal Practice §17.13 (1971); *U. S. v. Cless,* 150 F. Supp. 687 (M.D. Pa. 1957); *Dickhoff v. Shaughnessy,* 142 F. Supp. 535 (S.D.N.Y. 1956).

The law requires a reversal of the order entered below. As the parties and the court below, all of whom support summary judgment one way or the other concede, there is no genuine issue of material fact in the case. We may therefore conclude the matter here.

The judgment below is reversed and judgment is here entered in favor of the plaintiff and against the defendant; the defendant is hereby directed to execute in behalf of the city and to deliver to the Director of the Department of Lands and Buildings of the City of Pittsburgh for his execution and for delivery to the plaintiff, the originals of the deeds attached to plaintiff's complaint as Exhibits C and D.