516 A.2d 820

L. L. Bean, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Revenue, Respondent.

436

Argued September 10, 1986, before Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*George S. Isaacson,* with him, *Martin I. Eisenstein, Brann & Isaacson,* and *Thomas L. Wenger, Wix, Wenger and Weidner,* for petitioner.

*George T. Bell,* Chief Counsel, with him, *Arthur F. McNulty,* Assistant Counsel, and *Karen L. Stevens,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, October 22, 1986:

L.L. Bean, Inc. (L.L. Bean) seeks from this Court a declaratory judgment as to whether it is liable to collect and remit certain use taxes on behalf of the Commonwealth of Pennsylvania or, in the alternative, to provide transactional sales information or permit auditors from the Department of Revenue (Department) of the Commonwealth of Pennsylvania to review its books to gain such information with respect to sales conducted by mail with Pennsylvania residents. L.L. Bean seeks in addition a permanent injunction restraining the Department from imposing upon it a duty to collect and remit said taxes. The Department of Revenue has moved for summary judgment; no corresponding motion for summary judgment has been made by L.L. Bean.

Section 237(b) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7237(b) provides in pertinent part:

(1) Every person maintaining a place of business in this Commonwealth and selling or leasing tangible personal property or services . . . the sale or use of which is subject to tax shall collect the tax from the purchaser or lessee at the time of making the sale or lease, and shall remit the tax to the department.

(2) Any person required under this article to collect tax from another person, who shall fail to collect the proper amount of such tax, shall be liable for the full amount of the tax which he should have collected.

"Maintaining a place of business" as that term is used in Section 237(b) is defined in Section 201(b) of the Code, 72 P.S. 7201(b), as follows:

(1) Having or maintaining within this Commonwealth, directly or by a subsidiary, an office, distribution house, sales house, warehouse, service enterprise or other place of business, or any agent of general or restricted authority irrespective of whether the place of business or agent is located here permanently or temporarily or whether the person or subsidiary maintaining such place of business or agent is authorized to do business within the Commonwealth; or

(2) The engaging in any activity as a business within this Commonwealth by any person, directly or by a subsidiary, in connection with a lease, sale or delivery of tangible personal property or the performance of services thereon for use, storage or consumption including, but not limited to, having, maintaining or using any office, distribution house, sales house, warehouse or other place of business, any stock of goods or any solicitor, salesman, agent or representative under its authority, at its direction or with its permission, regardless of whether the person or subsidiary is authorized to do business in this Commonwealth.

(3) Regularly or substantially soliciting orders within this Commonwealth in connection with the lease, sale or delivery of tangible personal property to or the performance thereon of services for residents of this Commonwealth by means of catalogues or other advertising, whether such orders are accepted within or without this Commonwealth.

### FACTS

The parties have stipulated to the following facts which we hereby adopt. L.L. Bean is incorporated in Maine with its principal place of business in Freeport, Maine. It holds no stocks in subsidiary or affiliated companies outside of Maine and has no employees located outside the state of Maine. It engages in the business of mail-order sales from its Freeport facilities and ships merchandise to its customers by common carrier from Maine. It receives written and telephone purchase orders from customers, which orders are accepted at the Maine facilities. It owns no stock of goods within the Commonwealth.

L.L. Bean publishes catalogues describing its goods; however, the catalogues are not designed, prepared, printed, published or mailed from Pennsylvania. L.L. Bean's only direct solicitation of Pennsylvania residents is via its catalogues which are distributed regularly through the mail. These catalogues are advertised in magazines and newspapers sold and distributed in states including Pennsylvania. L.L. Bean's advertising is coordinated from New York State. L.L. Bean maintains primarily computerized records in processing customer orders. Its records contain names and addresses of persons to whom items are to be delivered. Payment is received for catalogue items via credit cards, checks, money orders, or C.O.D. to the common carrier. Some credit cards used for mail-order purchases are issued by banks or financial institutions located in the Commonwealth and some drafts are drawn on Commonwealth Banks or financial institutions.

L.L. Bean's total catalogue sales to Pennsylvania residents were approximately $12 million in 1983 and $12.5 million in 1984. Approximately 15 percent of the

items sold to Pennsylvania residents are not exempt under Pennsylvania's use tax. Products similar to those pictured in L. L. Bean catalogs can be purchased from Pennsylvania vendors and if so purchased would be subject to Pennsylvania sales tax.

L. L. Bean purchases some items from Pennsylvania manufacturers for resale; all such products are received by L. L. Bean at its Maine facilities. L. L. Bean employees make infrequent visits to Pennsylvania-based manufacturers from whom L. L. Bean purchases merchandise for resale. Such visits are made for the purpose of discussing problems concerning past shipments and future purchases.

L. L. Bean once engaged a Pennsylvania law firm to file a proof of claim in a U. S. Bankruptcy Court. L. L. Bean has never enlisted a Pennsylvania credit bureau or collection agency. L. L. Bean operates a toll-free "800" number which can be used by Pennsylvania residents. Local telephone companies which are necessary to complete such calls are under the jurisdiction of the Pennsylvania Public Utility Commission, but "800" telephone service is regulated by the Federal Communications Commission. L. L. Bean makes its customer lists available to other mail-order companies.

In addition to the above-mentioned facts, the parties have also stipulated as to L. L. Bean's transactions with V. F. Corporation (V. F.), a Pennsylvania corporation which maintains, owns and operates several outlet stores in the Reading, Pennsylvania area. V. F. is in no way affiliated through stock ownership with L. L. Bean. V. F. does collect Pennsylvania sales tax at its outlet stores and remits such collections to the Department. Beginning in October 1983, L. L. Bean began selling and shipping to V. F. goods which had been returned to L. L. Bean by its customers pursuant to its unconditional guaranty. Additionally, overruns, second-quality merchandise and discontinued items belonging to L. L.

Bean were purchased by V.F. Although this arrangement between V.F. and L.L. Bean was not initially governed by a formal purchase order system, such a system was implemented effective in February 1984. Returned goods are ordered by V.F. according to dollar amount and category of merchandise; purchases other than returned goods are ordered by individual item. Orders are accepted by L.L. Bean at its Maine facilities. Goods are delivered by common carrier to V.F. and facilities in Dartmouth, Massachusetts and then to V.F.'s Pennsylvania facilities. V.F. is billed upon delivery of the goods. In addition, V.F. trucks have received deliveries in Freeport, Maine. V.F. receives no discounts, though it does have the right to reject goods which are of insufficient or inadequate quality or are not in accordance with the purchase order and has in fact done so.

Items sold by V.F. in Reading are placed in bags containing the V.F. name. Employees of V.F., who wear name tags indicating they are V.F. employees, receive no commission or fees from L.L. Bean. V.F. sets its own prices without direction from L.L. Bean and L.L. Bean does not pay any operating, selling or marketing expenses and has no control over the size, locale or store hours of V.F. Complaints regarding merchandise purchased at V.F. are handled by V.F. L.L. Bean's trademark is defaced prior to its shipping the goods to the V.F. store.

V.F. displays signs indicating that the merchandise is not guaranteed by L.L. Bean. L.L. Bean has reveiwed these display signs for the purpose of assuring that its trademark was not being improperly used. It has also on one occasion reviewed V.F.'s brochure for similar reasons. In addition, L.L. Bean representatives made three trips to V.F. to discuss ways of improving the sale and delivery of merchandise by L.L. Bean to V.F. At the request of V.F., an L.L. Bean representative visited

V.F. in January 1984 to suggest ways to display hard goods such as camping equipment. On one occasion, in November 1983, L.L. Bean's auditor visited V.F. to insure that L.L. Bean's accounting procedures with respect to V.F. sales were accurate and to ascertain whether L.L. Bean's internal accounting controls were operating efficiently.

V.F.'s monthly payments to L.L. Bean are payments drawn on Pennsylvania financial institutions. L.L. Bean, however, has no Pennsylvania bank account. L.L. Bean has never stored merchandise for V.F. nor indemnified it for any loss. Aside from its arrangement with V.F., L.L. Bean has entered into only one contract in the state of Pennsylvania, this contract pertaining to the purchase of computer software from another company.

## THE DEPARTMENT'S ACTIONS

The Department on June 29, 1984 notified L.L. Bean that because of its activities with V.F., it must commence collecting use tax on its catalogue sales to Pennsylvania residents. L.L. Bean has refused to collect such tax. It has also refused, despite Departmental requests, to provide the Department with a list of Pennsylvania customers who are subject to tax liability for catalogue purchases. It has further refused requests to allow the Department's auditors to review L.L. Bean's books to locate taxable sales to Pennsylvania residents.

L.L. Bean currently does collect Maine sales and use taxes and sets forth the relevant information for Maine sales and use taxes in its catalogue. Collection on behalf of Pennsylvania would require printing additional tax information in its catalogue explaining Pennsylvania law. It is stipulated that, under Pennsylvania law, if L.L. Bean is liable to collect sales tax and such tax is not voluntarily remitted by the purchaser, L.L. Bean

would have to engage in collection efforts and, if such efforts failed, pay the tax itself.

Based upon the above factual stipulations the Department has moved for summary judgment, arguing that V.F. constitutes a "representative" of L.L. Bean under Section 201(b)(2) of the Code and hence that L.L. Bean maintains a place of business in the Commonwealth. In the alternative, it argues that as a mail-order seller L.L. Bean falls within the ambit of Section 201(b)(3). We must thus determine whether on the present facts L.L. Bean is "maintaining a place of business" which would obligate it to collect Pennsylvania use taxes.

## ANALYSIS

We begin our analysis by recognizing that all states which impose sales taxes on tangible property purchased within a state also impose a corresponding use tax on property bought out-of-state in order to protect sales tax revenues and put local retailers on a competitive level with out-of-state retailers who are exempt from sales tax. *National Geographic v. California Equalization Board,* 430 U.S. 551 (1977). The constitutionality of such state action is firmly established. *Id.*

> But the limitation of use taxes to consumption within the State so as to avoid problems of due process that might arise from the extension of the sales tax to interstate commerce . . . does not avoid all constitutional difficulties. States necessarily impose the burden of collecting the tax on the out-of-state seller; the impracticability of its collection from the multitude of individual purchasers is obvious.

*Id.* at 555 (citing *Miller Brothers Co. v. Maryland,* 347 U.S. 340 (1954)). (Citations omitted.)

Not every out-of-state seller can be held liable for obtaining payment for use tax without a constitutional

violation occurring. Such a collection burden when placed upon an out-of-state seller necessarily triggers due process concerns as well as imposes a restraint upon interstate commerce. L.L. Bean raises both of these constitutional questions for our consideration. The legal principles governing these two concerns are similar. In determining whether a state tax comports with constitutional due process requirements, the controlling question is "whether the state has given anything for which it can ask return." *National Bellas Hess, Inc. v. Department of Revenue of Illinois,* 386 U.S. 753, 756 (1967) (citing *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435 (1940)). With respect to the burden on interstate commerce the U.S. Supreme Court has held that "[s]tate taxation falling on interstate commerce . . . can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys." *National Bellas,* 386 U.S. at 756 (quoting *Freeman v. Hewit,* 329 U.S. 249 (1946)). Accordingly, when examining the constitutionality of imposing the duty of collection of use tax upon an out-of-state seller, the relevant legal inquiry is whether there exists "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *National Bellas,* 386 U.S. at 756 (quoting *Miller Brothers,* 347 U.S. 340, 344-345; *Scripto, Inc. v. Carson,* 362 U.S. 207, 210-11 (1960)).

The existence of such a link or nexus will turn upon the individual facts of the case. The facts in the instant case having been stipulated to, we thus examine precedent in order to determine whether either imposing collection obligations on L.L. Bean or requiring L.L. Bean to supply its customer data to the Department is proper here.

Case law has established that a sufficient nexus is found to exist where local agents of the seller are present in the taxing state. *Felt & Tarrant Manufactur-*

*ing Co. v. Gallagher,* 306 U.S. 62 (1939); *General Trading Co. v. State Tax Commission of the State of Iowa,* 332 U.S. 335 (1944). A similar result has been reached where the seller has local retail stores which are present in the taxing state. *Nelson v. Sears, Roebuck & Co.,* 312 U.S. 359 (1941); *Nelson v. Montgomery Ward & Co.,* 312 U.S. 373 (1941). And in *National Geographic,* the presence in the taxing state of two offices which solicited advertisements and received the benefit of municipal protection (fire, police, etc.) was held a sufficient nexus. Similarly, in *Scripto,* where a seller had ten wholesalers or jobbers who continuously conducted local solicitation and forwarded orders to the seller, the nexus was sufficient. But in *Miller Brothers,* the Supreme Court held that Maryland could not constitutionally impose upon a Delaware seller an obligation to collect use taxes where the Delaware firm had no retail outlets or sales solicitors in Maryland, despite the presence of advertising in Maryland which resulted in substantial sales and the delivery of goods into Maryland by the seller using its own trucks and drivers. And in *National Bellas,* the Supreme Court found lacking a nexus where the only contacts between the seller and the taxing state were through the United States mail or common carrier and occasional advertising flyers. Our task is to determine on which side of the chalk line the present case falls. L.L. Bean argues that its situation is analogous to *National Bellas* and thus that no obligation can be imposed upon it by the Department. The Department counters that *National Bellas* applies only when the sole contacts between the taxing state and the seller are the mails and common carriers, and contends that this case involves additional and cumulative contacts not present in *National Bellas.* It further argues, citing numerous state cases, that the trend in finding the requisite nexus has moved from the initial requirement of physical property in the state to the lesser re-

quirement of business representatives in the state and finally to the consideration of "the totality of business activities in a certain state", arguing, in effect, that the chalk line has been, if not redrawn, at least redefined. The Department to buttress its argument further points out the growth of the mail-order business and the advent of computer systems which facilitate record-keeping.

We do agree with the Department that the activities present here are not as remote from the taxing state as those present in *National Bellas*. But, we believe them to be less substantial than in *Miller Brothers*. It is already clear that general mailings and national advertising not directed to residents of one state in particular are not sufficient to establish the requisite link. We believe that the use of an "800" number or the fact that checks are drawn on Pennsylvania financial institutions are of similarly insufficient magnitude to establish a nexus. Nor would we suggest that a one-time retention of a Pennsylvania lawyer to protect L.L. Bean's credit interest in a bankruptcy proceeding should be held to establish a sufficient nexus.

We turn then to an examination of the facts pertaining to the arrangement L.L. Bean has with V.F. The infrequent visits made by personnel of L.L. Bean can be categorized as those whose purpose was to protect its trademark; whose purpose was to comply with the request by V.F. that L.L. Bean demonstrate how to display hard goods; whose purpose was to improve sale and delivery of merchandise; and whose purpose was checking L.L. Bean's own accuracy of its record keeping. Despite the Department's strenuous arguments we fail to see how these facts demonstrate that V.F. acted as a representative of L.L. Bean. Save by policing its own trademark, L.L. Bean exhibited no control over V.F. or its employees, nor did it grant any special discounts to V.F. A representative is one who stands in the place of

another. *Black's Law Dictionary* 1170 (5th ed. 1979). Inasmuch as L.L. Bean exerts no control over, nor grants any special benefits to V.F., we fail to see how the latter can be a legal representative of L.L. Bean. This leaves the Department only with the theory that collection obligations can be imposed on L.L. Bean through application of Section 201(b)(3) (soliciting orders by means of catalogues or other advertising). We believe, however, that with respect to out-of-state mail-order firms whose only connection with the taxing state is soliciting and filling orders through the stream of interstate commerce, *National Geographic* and *Miller Brothers* prohibit imposition of collection duties on the out-of-state seller. Hence, application of Section 201(b)(3) to the instant seller would be unconstitutional.

Since, as we have determined, the Department has not demonstrated a sufficient nexus to require L.L. Bean to collect and remit the taxes, the Department seeks in the alternative to compel L.L. Bean to release or make available its records to the Department so it can endeavor to collect the tax from Pennsylvania residents. The Department relies upon Section 272 of the Code, 72 P.S. §7272, as authority for it to compel the production of L.L. Bean's customer records. This Section states:

> The department or any of its authorized agents is hereby authorized to examine the books, papers and records of any taxpayer in order to verify the accuracy and completeness of any return made or, if no return was made, to ascertain and assess the tax imposed by this article. The department may require the preservation of all such books, papers and records for any period deemed proper by it but not to exceed three years from the end of the calendar to which the records relate. Every such taxpayer is hereby re-

quired to give to the department, or its agent, the means, facilities and opportunity for such examinations and investigation. The department is further authorized to examine any person, under oath, concerning taxable sales or use by any taxpayer or concerning any other matter relating to the enforcement or administration of this article, and this end may compel the production of books, papers and records and the attendance of all persons whether as parties or witnesses whom it believes to have knowledge of such matters. The procedure for such hearings or examinations shall be the same as that provided by The Fiscal Code relating to inquisitorial powers of fiscal officers.

72 P.S. §7272. Reference to Section 1602(c) of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §1602, (which pertains to inquisitorial provisions of fiscal officers) indicates, however, that the Department must issue a summons directed to the sheriff of the county where the person resides and hence the Department's power is limited to reaching only in-state residents. Additional support for this construction can be found by examining Section 273 of the Code, 72 P.S. §7273, which provides as follows:

Every agent for the purpose of delivery of goods shipped into the Commonwealth by a nonresident including, but not limited to, common carriers shall maintain adequate records of such deliveries pursuant to rules and regulations adopted by the department and shall make such records available to the department upon request after due notice.

Had the legislature intended Section 272 to be applicable to nonresidents, the power to obtain records under Section 273 would have been superfluous. We

thus believe no such broad power was granted nor intended under Section 272 and accordingly conclude that the Department lacks the power to obtain L.L. Bean's records.

We add here that we can sympathize with the Department's frustration in its inability to ascertain the names of Pennsylvania residents who should be, but are not, paying use taxes. But this problem, which is one of national concern, is more properly dealt with by Congress than by judicial lawmaking. Until legislative action is taken, *National Bellas* and *Miller Brothers* represent the current state of the law and we are bound by them.

Having determined that L.L. Bean incurs no responsibility for collecting the tax or providing its records to the Department, we thus issue a declaratory judgment that the Department's attempt to impose on L.L. Bean a duty to collect the use tax is in this instance violative of the United States Constitution. The Department is hereby enjoined permanently from attempting to require L.L. Bean to make such collections.

We deny the Department's motion for summary judgment and enter summary judgment in favor of L.L. Bean.[1]

ORDER

Now, October 22, 1986, the following order is hereby entered:

    1.    It is declared that imposition of the obligation to collect use tax upon L.L. Bean is violative of the United States Constitution.

---

[1] It is clear that summary judgment may be entered in favor of a non-moving party. *Allegheny County Port Authority v. Flaherty,* 6 Pa. Commonwealth Ct. 135, 293 A.2d 152 (1972). *See also Boron v. Smith,* 380 Pa. 98, 110 A.2d 169 (1955) (judgment on the pleadings may be entered in favor of non-moving party).

2. The Department is hereby permanently enjoined from imposing or attempting to impose upon L.L. Bean the obligation to collect and remit use taxes or provide its records to the Department in order to assist the Department in collecting such taxes.

3. The Department's motion for summary judgment is denied.

4. Summary judgment is entered in favor of L.L. Bean.

President Judge CRUMLISH did not participate in the decision in this case.