Eagle Downs Racing Association, Inc. et al., Petitioners *v.* Commonwealth of Pennsylvania, State Harness Racing Commission et al., Respondents.

Argued January 31, 1983, before Judges BLATT, MACPHAIL and DOYLE, sitting as a panel of three.

*Samuel E. Dennis,* with him *Diana S. Hare* and *Aaron Jay Beyer, Meltzer & Schiffrin, Harry L. Rossi, Liederbach, Rossi, Hahn, Casey & Foy,* and *Larrick E. Stapleton,* for petitioners.

*Barbara S. Drake,* Deputy General Counsel, with her *Richard DiSalle, Rose, Schmidt, Dixon & Hasley,* and *Francis J. Wormuth, Kennedy, Hodin & Wormuth,* for repondents.

OPINION BY JUDGE BLATT, March 28, 1983:

Before us is the motion for summary judgment[1] filed by the petitioners who are thoroughbred horse and race track owners, operators, associations, trainers and breeders. The petitioners ask us: 1) to enjoin the respondent State Harness Racing Commission (Harness Commission) from granting its fellow respondents,[2] who are harness racing associations or operators, permission to operate and accept wagering

---

[1] Summary judgment may be entered when a case is clear and free from doubt, and when the moving party has established that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law, viewing the record most favorably to the non-moving party. *Pennsylvania Public Utility Commission Bar Ass'n v. Thornburgh,* 62 Pa. Commonwealth Ct. 88, 434 A.2d 1327 (1981) (summary judgment available in declaratory judgment action); *Laspino v. Rizzo,* 40 Pa. Commonwealth Ct. 625, 398 A.2d 1069 (1979) (summary judgment available in action in equity).

[2] Washington Trotting Association, Inc., Mountain Laurel Racing, Inc., and Pocono Downs, Inc.

on televised simulcasts of out-of-state thoroughbred horse races; 2) to issue an order directly enjoining the aforementioned harness racing associations or operators from operating and accepting wagers on such thoroughbred simulcasts; 3) to issue a declaratory judgment that the Harness Commission has no power, authority or jurisdiction to grant permission for the simulcast of any thoroughbred race and that all harness tracks are precluded from conducting any thoroughbred racing activities including such thoroughbred simulcasts. Also before us is the respondents' motion for judgment on the pleadings.[3]

Both parties agree that the central issue in this dispute is purely one of law; namely, whether or not a harness racing licensee may accept wagering on simulcasts of out-of-state thoroughbred horse races.

The resolution of this issue, of course, depends upon the statutory construction[4] of Section 216 of the Race Horse Industry Reform Act (Act), Act of December 17, 1981, P.L. 435, 4 P.S. §325.216, which provides as follows:

> Interstate simulcastings of horse races
>
> Each commission may, upon request by any licensed corporation, grant permission for electronically televised simulcasts *of horse races* to be operated by the licensed corporation at the race track enclosure where a horse race meeting is being conducted during, between, be-

---

[3] A motion for judgment on the pleadings is in the nature of a demurrer and the moving party's right to prevail must be so clear that a trial would be a fruitless exercise. *Board of Pensions and Retirement v. Bradley*, 65 Pa. Commonwealth Ct. 154, 442 A.2d 26 (1982).

[4] "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a).

fore or after posted races for that racing day. *The simulcasts shall be limited to horse races conducted at facilities outside this Commonwealth and televised to race track enclosures within this Commonwealth.* All simulcasts of horse races from outside this Commonwealth shall also comply with the provisions of the Interstate Horse Racing Act of 1978, 92 Stat. 1811, 15 USC 3001 et seq. *All forms of pari-mutuel wagering as described under section 221 shall be allowed on horse races to be televised by simulcasting.* Each commission may promulgate rules or regulations to regulate the wagering and the *operation* of these horse races. All moneys wagered by patrons on these horse races shall be computed in the amount of money wagered each racing day for purposes of taxation under Section 222. (Emphasis added.)

The petitioners argue that under this Section the respondent harness racing associations or operators are licensed to conduct and accept wagering *only* for simulcasts of harness (as opposed to thoroughbred) races. The petitioners point to Section 201(a) of the Act[5] which establishes the State Horse Racing Commission and grants to it ''general jurisdiction over all pari-mutuel thoroughbred horse racing activities in the Commonwealth'' and to Section 201(b) of the Act[6] which establishes the Harness Commission which ''shall have general jurisdiction over all pari-mutuel harness racing activities.'' The petitioners also cite Section 202(a) of the Act[7], which provides that:

---

[5] 4 P.S. §325.201(a).

[6] 4 P.S. §325.201(b).

[7] 4 P.S. §325.202(a).

The State Horse Racing Commission shall have the power to supervise all thoroughbred horse race meetings at which pari-mutuel wagering is conducted. The State Harness Racing Commission shall have the power to supervise all harness horse racing meetings at which pari-mutuel wagering is conducted. The commission may adopt rules and regulations to effect the purposes and provisions of this act.

Thus, according to the petitioners, the General Assembly's establishment of separate regulatory bodies, one for thoroughbred and one for harness racing indicates the intent of Section 216 of the Act to be that wagering on interstate simulcasts of horse races may be permitted only for races of the same kind as those being conducted at the particular track concerned.

Inarguably, a harness licensee cannot *conduct* live thoroughbred races or accept wagering thereon. The respondents maintain, however, that the *operation* of a thoroughbred simulcast under Section 216 of the Act is not the equivalent of *conducting* a thoroughbred race, and that in granting permission to simulcast thoroughbred races to its licensees, the Harness Commission did not, under Section 201 of the Act, assert any jurisdiction over *thoroughbred racing activities* nor did it, under Section 202(a) of the Act, thereby supervise a thoroughbred horse race meeting.

Our examination of the language in Section 216 of the Act discloses that the Act contemplates: that simulcasts as being *operated* (not conducted) by the licensee; that the races which are simulcast are considered as *conducted* at facilities outside the Com-

monwealth; that these races are expected to be *televised* (not conducted) by a licensee; and, that *"each* Commission may promulgate rules or regulations to regulate the wagering and the *operation* of these horse races." *Id.* (emphasis added). Furthermore, this section clearly provides that "horse races" may be permitted to be simulcast at facilities where any "horse race meeting" is being conducted, and we believe it to be evident that "horse races" or a "horse race meeting" may be either harness or thoroughbred. *Id.*

We must hold, therefore, that Section 216 of the Act does not preclude[8] a harness licensee, such as the respondents herein, from accepting wagering on the operation of interstate simulcasting of thoroughbred races. Nor can we declare, in light of the foregoing, that the Harness Commission has no power, authority or jurisdiction to grant permission for the simulcast of thoroughbred races, or that harness racing tracks may not operate and accept wagering for such a simulcast. Moreover, we are conscious of the principle of Statutory Construction set forth by the legislature in Section 1922(5) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(5), which directs that where, as here, a provision may be interpreted to benefit either a private party or the Commonwealth, it must be presumed that the General Assembly "intends to favor the public interest as against any private interest." *See Rakoczy v. Jandy Coal Co., Inc.,* 26 Pa. Commonwealth Ct. 459, 363 A.2d 1338 (1976).

---

[8] We specifically reject the petitioners' contention that to interpret Section 216 of the Act as the respondents urge would allow the Harness Commission to usurp the State Horse Racing Commission's jurisdiction in other areas such as track admission fees. Control over wagering simply is not the equivalent of control over the race meeting itself.

We must therefore deny the petitioners' motion for summary judgment and declaratory relief. And in cases, where as here, there is no genuine issue of material fact remaining, we have recognized that summary judgment may be entered in favor of the non-moving party if such party is clearly entitled to judgment on the legal issue presented. *Allegheny County Port Authority v. Flaherty*, 6 Pa. Commonwealth Ct. 135, 293 A.2d 152 (1972); *see also Pottsville Area School District v. Marteslo*, 55 Pa. Commonwealth Ct. 481, 423 A.2d 1336 (1980); 2 Goodrich-Amram 2d §1035(b):6 (1976).

Accordingly, we will enter judgment in favor of the respondents.[9]

ORDER

AND Now, this 28th day of March, 1983, the petitioners' motion for summary judgment and a declaratory judgment in the above-captioned matter is hereby denied and it is further ordered that judgment be entered in favor of the respondents.

---

[9] We need not, therefore, consider the respondents' motion for judgment on the pleadings.