**PENNSYLVANIA NATIONAL TURF CLUB, INC., and Mountainview Thoroughbred Racing Association, Petitioners,**

v.

**STATE HORSE RACING COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.
Decided April 22, 2003.

Bradley K. Moss, Philadelphia, for petitioners.

Jorge M. Augusto, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Pennsylvania National Turf Club, Inc. and Mountainview Thoroughbred Racing Association (collectively, Penn National) appeal from a May 23, 2002 Final Order of the State Horse Racing Commission (Commission), which denied Penn National's application for permission to receive interstate simulcasts of Quarter Horse and Arabian horse races with pari-mutuel wagering, when those races are transmitted as part of a full-card, thoroughbred simulcast. Penn National presents two questions for review: whether the Commission erred in holding that it did not have the authority to permit its licensees to receive interstate simulcasts of Quarter Horse and Arabian horse races with pari-mutuel wagering as part of a full card of simulcast Thoroughbred horse races, and whether the Commission erred in holding that the Race Horse Industry Reform Act (Act), Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. §§ 325.101—325.402, limits its licensees to receiving interstate simulcasts of only Thoroughbred and harness races.

By letter to the Commission dated November 1, 2001 Penn National requested permission to receive simulcast transmissions of Quarter Horse and Arabian horse races when those races were transmitted as part of a full card of Thoroughbred horse races. The letter explained that Quarter Horse and Arabian horse races were sometimes included in Thoroughbred racing programs carried on Penn National's "Telebet system," requiring the televised broadcast to "go dark" for those individual races and thereby confusing patrons. Penn National also submitted a memorandum of law in support of the request, in which it argued that allowing the simulcast of currently prohibited, non-Thoroughbred races would benefit the

Pennsylvania horse racing industry and that the applicable provisions of the Act permitted simulcasts of non-Thoroughbred races. In its May 23, 2002 Final Order, the Commission stated that it agreed that allowing such simulcasts would be in the interest of Pennsylvania horse racing but that the Act limited horse racing in Pennsylvania only to live and simulcast Thoroughbred and harness races.[1]

■ Penn National first argues that the Commission's authority to grant licensed corporations the right to receive interstate simulcasts of Quarter Horse and Arabian horse races is consistent with Section 201 of the Act.[2] That Section confers on the Commission "general jurisdiction over all pari-mutuel thoroughbred racing activities in the Commonwealth and the corporations engaged therein." 4 P.S. § 325.201(a). Penn National points out that Section 201 does not limit the Commission solely to regulating Thoroughbred racing and that the Commission has the authority to allow licensees to present a variety of non-racing activities, including concerts and professional wrestling. Citing *Eagle Downs Racing Association, Inc., v. State Harness Racing Commission*, 73 Pa.Cmwlth. 155, 457 A.2d 1008 (1983), Penn National contends that a licensee licensed to "conduct" one type of horse race may still "operate" a simulcast of another type of horse race. It concludes that the increased revenue and greater exposure of Pennsylvania horse racing to be generated by the simul-

casts along with better service to racing patrons support a broad interpretation of the Commission's powers under Section 201.

Second, Penn National argues that Section 216.1 of the Act, 4 P.S. § 325.216a, permits simulcasting of Quarter Horse and Arabian horse racing because references to "international and interstate simulcastings of horse races," "horse races" and "races" throughout the section include all simulcast horse races in general, and not just Thoroughbred and harness races. Penn National submits that Section 216 of the Act, 4 P.S. § 325.216, refers specifically to "thoroughbred races" and throughout the Act the legislature used the terms "thoroughbred" and "harness" to refer to specific types of live racing allowed in Pennsylvania. These distinctions, Penn National asserts, indicate a legislative intent to treat simulcasts under Section 216.1 differently than the live racing allowed in Pennsylvania.

The Commission argues that because Section 201 of the Act grants it authority only over thoroughbred horse racing and specifies that thoroughbred horses are only those horses registered with the Jockey Club in New York, N.Y., and Quarter Horses and Arabians are not so registered, the Commission is not authorized to approve simulcasts of Quarter Horse and Arabian horse races. Without referring to Sections 216 or 216.1, the Commission insists that the definition in Section 201 of

---

**1.** The Court's review of the Commission's final order is prescribed in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. The Court shall affirm unless it determines that the adjudication is in violation of constitutional rights, that it is not in accordance with law, that provisions relating to practices of Commonwealth agencies in Sections 501—508 of the Administrative Agency Law, 2 Pa. C.S. §§ 501—508, have been violated or that any necessary finding of fact is not supported by substantial evidence. *See also Leon E.*

*Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

**2.** A "licensed corporation" is a corporation that has obtained authority from the Commission or the State Harness Racing Commission to conduct Thoroughbred or harness horse race meetings with pari-mutuel wagering. Section 201 of the Act, 4 P.S. § 325.102.

"thoroughbred horse racing" is sufficient to show that the legislature did not intend to allow the Commission authority over non-Thoroughbred simulcasts. Furthermore, if the legislature had intended to allow simulcasts of Quarter Horse and Arabian horse races, it could have done so at any time by adding specific language to that effect. Because Section 201 limits the Commission's authority to thoroughbred horse racing, Penn National's reliance on the distinctions with other sections of the Act is misplaced. The Commission also maintains that this Court's decision in *Eagle Downs Racing Association* does not support Penn National's position because it did not expand the definition of thoroughbred to include other breeds of horses.

 The issue before the Court is purely one of statutory interpretation. When interpreting a statute, a court must ascertain and effectuate the intent of the General Assembly and give full effect to each provision of a statute if it is at all possible. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *East Lampeter Township v. Pennsylvania State Horse Racing Commission*, 704 A.2d 703 (Pa.Cmwlth.1997), *aff'd per curiam*, 554 Pa. 172, 720 A.2d 763 (1998). When statutory language is clear, its words and phrases must be used consistent with their common and accepted usage. *Id.*

Section 216.1 of the Act, added by Section 2 of the Act of June 7, 1993, P.L. 86, provides in relevant part:

(a) Each commission may, upon request by a licensed corporation, grant permission to maintain common pari-mutuel pools on *international and interstate races* transmitted to and from the racetrack enclosures within this Com-

monwealth, such licensed corporation to be designated as the "host licensee." The permission to act as host licensee for international and interstate simulcast *races* shall be limited to licensed corporations....

(b) Cross simulcasting of the *races described in subsection (a)* shall be permitted if all amounts wagered on the races in this Commonwealth are included in the common pari-mutuel pools. A host licensee seeking permission to cross simulcast must obtain approval from both the State Harness Racing Commission and the State Horse Racing Commission....

(c) All moneys wagered by patrons in this Commonwealth on these *horse races* shall be computed in the amount of money wagered each racing day for purposes of taxation under section 222 and all *thoroughbred races* shall be considered a part of a *thoroughbred horse race meeting* and all *harness races* shall be considered a part of a *harness horse race meeting* for purposes of section 222(b)(5).

4 P.S. § 325.216a (emphasis added). The Court cannot discern how the foregoing language evidences a legislative intent to allow the simulcast reception of and wagering on Quarter Horse or Arabian horse racing. Subsection 216.1(c) specifically refers to thoroughbred and harness races, and it is not evident how races not falling into one of those two categories would be treated for taxation purposes. Furthermore, and contrary to Penn National's argument, it is evident from the above language and in many other sections of the Act that the general term "horse race" is intended to refer only to thoroughbred or harness racing.[3]

---

3. For example, see Section 202(b)(1), 4 P.S. § 325.202(b)(1) ("Each commission shall

Finally, *Eagle Downs Racing Association* does not support Penn National's argument, for the issue in that case was merely whether a harness racing facility could simulcast thoroughbred races, one of the two types of horse racing permitted by the Act. That case says nothing about other types of horse racing not contemplated by the Act. Accordingly, the Commission's order is affirmed.

### ORDER

AND NOW, this 22nd day of April, 2003, the order of the State Horse Racing Commission is hereby affirmed.

have the power to fix a minimum charge for admission to *horse race meetings* ....''); Section 203(c), 4 P.S. § 325.203(c) (''No corporation shall have the right to conduct any *horse race meeting* except on obtaining a license....''); Section 204(a), 4 P.S. § 325.204(a) (referring to a "track facility at which it [a corporation] conducts pari-mutuel *horse races*''); Section 209, 4 P.S. § 325.209 (entitled "Licenses for *horse race* meetings"); Section 216, 4 P.S. § 325.216 (entitled "Interstate simulcasting of *horse races*''). Although the Commission does not cite its own regulations to support its argument, 58 Pa.Code § 167.1 defines a "simulcast" as "[a]n electronically televised horse race which is conducted at a track other than the track where the race is televised," and it defines "horse race" as "a thoroughbred or harness horse race."